UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CITY OF ATLANTIC CITY, | |
| Plaintiff, | Civil. No 14-5169 (RBK/AMD) |
| v. | OPINION |
| ZEMURRAY STREET CAPITAL, LLC, et al. | |
| Defendants. | |

**KUGLER**, United States District Judge:

This case arises from the allegedly fraudulent behavior of Defendant Zemurray Street Capital, LLC ("Zemurray") and its managing partner, Defendant W. Wesley Drummon ("Drummon"), (collectively, "Defendants"). Presently before the Court is Defendants' Motion to Dismiss Count Five ("Defendants' Motion" [Dkt. No. 55]). For the reasons that follow, the Defendants' Motion will be **GRANTED**.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On or around May 22, 2013, the City of Atlantic City (the "City") authorized the execution of a Memorandum of Understanding ("MOU") between the City and Zemurray, the terms of which implemented and administered the Atlantic City Community Loan Development Program (the "Loan Program"). (First Am. Compl. ("FAC") [Dkt. No. 48] ¶ 1.) The Loan Program was intended to "provid[e] small business financing and residential mortgage financing to certain eligible business and residents of Atlantic City." (*Id.* ¶ 29.) Under the terms of the MOU, the City was to provide $3,000,000.00 in loan funds to the Loan Program, which Zemurray would them implement and oversee. (*Id.* ¶ 2.) Specifically, Zemurray would oversee

1

loan originations administered by lender Tennessee Business and Industrial Development Corporation ("BIDCO"), whom Zemurray selected, and Zemurray would then provide the City with quarterly reports accounting for the loan funds. (*Id.* ¶¶ 2, 30, 34.)

The MOU also required that the loan funds be deposited into an escrow account and only released in accordance with the terms of the escrow agreement. (*Id.* ¶¶ 31–33, 37–38.) On July 19, 2013, the City, Zemurray, and City National Bank executed an escrow agreement creating an escrow account for the Loan Program funds and establishing City National Bank as the escrow agent. (*Id.* ¶ 39.) The escrow agreement gave Zemurray the authority to give City National Bank instructions with respect to the funds in the escrow account. (*Id.* ¶ 41.)

About a month after, on August 23, 2013, Zemurray transferred the whole of the $3,000,000.00 from the escrow account to a bank account at another bank belonging to BIDCO. (*Id.* ¶ 6.) Zemurray then failed to provide quarterly report accounting, and there is no indication from the sole status reports provided by Zemurray where the $3,000,000.00 was located or how the funds were spent. (*Id.* ¶ 8.)

The City alleges that before and after execution of the MOU, Zemurray misrepresented to the City the nature of its relationship with BIDCO. (*Id.* ¶ 3.) Zemurray represented to the City that BIDCO would serve as the loan originator for the Loan Program, knowing that BIDCO had not agreed to do so. (*Id.* ¶ 85.) Further, Zemurray represents on its website that it is a "specialty finance investment company created to be a source of capital to small and medium sized businesses, including emerging businesses," and also represents that "SBA guaranteed loans are

originated by ZSC's subsidiary, TN BIDCO, an SBA licensed 'Preferred Lender.'" (*Id.* ¶ 86 (quoting Zemurray's website).)[1]

When Zemurray failed to provide the quarterly reports, the City decided to investigate Zemurray. (*Id.* ¶¶ 87–88.) Once the City learned of Defendants' misrepresentations, the City sought to invalidate the MOU and demanded prompt return of the Loan Program funds to the City. (*Id.* ¶ 88.)

The City then filed this suit against Zemurray and Drummon, Zemurray's managing member in the Superior Court of New Jersey, Atlantic County, Law Division. (*See* Notice of Removal [Dkt. No. 1].) Zemurray and Drummon then removed the case to this Court. (*See id.*) Subsequently, the City filed its FAC, bringing claims against Gary A. Lax, whom the City alleges is a member of Zemurray; BIDCO, now a subsidiary of Zemurray; Michael J. Lax, an executive officer of BIDCO; Latan Family Trust 1,[2] a member of Zemurray; and Taipan Holdings, LLC, a member of Zemurray; in addition to Zemurray and Drummon. (*See generally* FAC.) The only motion presently before the Court is that of Zemurray and Drummon to dismiss Count V of the FAC, which alleges a violation of the New Jersey Consumer Fraud Act ("NJCFA"), N.J.S.A. 56:8-1, et seq. Having been briefed by the parties, Defendants' Motion is now ripe for review.

---

[1] As noted by the City in its opposition to Defendants' Motion, Zemurray's website is now defunct. (City Opp. [Dkt. No. 58] at 11 & n.1.) However, for the purposes of this motion, the fact as pleaded in the FAC is accepted by the Court as true.

[2] In its answer, Latan Family Trust 1 explains that the correct name is actually Lantana Family Trust 1. (*See* Answer and Counterclaim [Dkt. No. 72] ¶ 15 n.1.) However, counsel then signed the document on behalf of "Latana Family Trust 1". (*See id.* at 19.) To avoid confusion, the Court will use the name in the documents provided by the moving defendants and the name in the FAC.

## II.     JURISDICTION

The City brings claims against all Defendants based solely on New Jersey state law.  In invoking this Court's jurisdiction by removing the action, Defendants initially only certified that Zemurray was a Delaware Limited Liability Company with its principal place of business in New York.  (*See* Notice of Removal ¶ 2.)  The Court found this allegation deficient, and ordered Defendants to file an amended notice of removal that would adequately plead the citizenship of the defendant LLC.  (*See* Order (Sept. 9, 2014) [Dkt. No. 4].)

In its Amended Notice of Removal, Zemurray established that it is a citizen of the states of New York, Tennessee, Maryland, and Florida, as well as the country of Australia based on the citizenship of its members.[3]  (Am. Notice of Removal [Dkt. No. 5] ¶¶ 8–11.)  The Amended Notice of Removal also establishes that Latan Family Trust 1 is a citizen of Tennessee and that Taipan Holdings LLC is a citizen of the states of Maryland and Florida as well as the country of Australia.  (*Id.*)  The FAC alleges that Gary A. Lax is a citizen of Washington, D.C., Michael J. Lax is a citizen of Tennessee, and BIDCO was a Tennessee corporation with a principal place of business in Tennessee which then became a subsidiary of Zemurray.  (FAC ¶¶ 14, 16–17.)[4]  The

---

[3] The Amended Notice of Removal actually asserts that Zemurray is a citizen of Connecticut and Washington, D.C. as well, and neglects to mention citizenship in Maryland.  The Court is unclear whether Zemurray is actually a citizen of Washington, D.C. because Zemurray does not identify Gary A. Lax as a member of Zemurray, but the FAC alleges that Gary A. Lax is a member of Zemurray.  What is clear is that Zemurray is not a citizen of Connecticut, because no member is a citizen of Connecticut, even though one member who is also an unincorporated association is organized under the laws of Connecticut.  The Court is satisfied that at minimum, Zemurray is not a citizen of New Jersey.

[4] The FAC fails to include a numbered paragraph alleging the citizenship of Michael J. Lax.  However, his citizenship is nominally alleged on page 2 of the FAC, indicating that he is a citizen of Tennessee.  (*See* FAC at 2.)  The Court is satisfied that at minimum, Michael J. Lax is not a citizen of New Jersey.

sole plaintiff, the City, is a New Jersey municipal corporation. (*See id.* at 2.) The action was timely removed pursuant to 28 U.S.C. §§ 1441 and 1446.

The Court is satisfied that it has jurisdiction over the claims of the FAC pursuant to 28 U.S.C. § 1332(a)(3) based on the above recited citizenships demonstrating that no defendant is a citizen of the state of New Jersey, citizens of a foreign state are parties, and the amount in controversy exceeds $75,000.

**III.    LEGAL STANDARD**

Rule 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint is sufficient if it contains enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). It is not for courts to decide at this point whether the moving party will succeed on the merits, but "whether they should be afforded an opportunity to offer evidence in support of their claims." *In re Rockefeller Ctr. Prop., Inc.*, 311 F.3d 198, 215 (3d Cir. 2002). Yet, while "detailed factual allegations" are not necessary, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678–79.

To make this determination, a court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint cannot survive where a court can infer only that a claim is merely possible rather than plausible. *Id.*

## IV. DISCUSSION

Defendants move to dismiss Count V of the FAC, arguing that the City has failed to state a claim under the NJCFA because the MOU is not a service sold to the public at large. (*See* Defs.' Mot. Br. [Dkt. No. 55-1] at 3–4.) The City responds that Zemurray was offering loan administration services to the general public, not just the MOU, and so its conduct falls within the NJFCA. (*See* City Opp. at 10–11.)

### A. An Overview of the NJCFA

The NJCFA "is intended to protect consumers by eliminating sharp practices and dealings in the marketing of merchandise and real estate." *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006) (quoting *Lemelledo v. Beneficial Mgmt. Corp.*, 150 N.J. 255, 263 (1997)). New Jersey courts have repeatedly emphasized that "the [NJ]CFA seeks to protect consumers who purchase 'goods or services generally sold to the public at large.'" *Id.* (quoting *Marascio v. Campanella*, 298 N.J. Super. 491, 499 (App. Div. 1997)). As such, the Third Circuit

has concluded that "the [NJ]CFA is not intended to cover every transaction that occurs in the marketplace, but, rather, its applicability is limited to consumer transactions which are defined both by the status of the parties and the nature of the transaction itself." *Id.* (internal quotations and alterations omitted) (quoting *Arc Networks, Inc. v. Gold Phone Card Co.*, 333 N.J. Super. 587, 590 (Law Div. 2000)).  Nevertheless, "[t]he language of the [NJ]CFA evinces a clear legislative intent that its provisions be applied broadly in order to accomplish its remedial purpose, namely, to root out consumer fraud." *Lemelledo*, 150 N.J. at 264; *see also Real v. Radir Wheels, Inc.*, 198 N.J. 511, 520 (2009) ("The CFA is recognized to be remedial legislation which should be construed liberally." (internal quotation marks omitted)).

In relevant part, the NJCFA provides:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, *in connection with the sale or advertisement of any merchandise* or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. 56:8-2 (emphasis added).

The NJCFA also defines many of the terms in a broader sense than a lay person may otherwise interpret the term.  "Sale" is defined as "any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute." N.J.S.A. 56:8-1(e).  "Advertisement" is defined as "the attempt directly or indirectly by publication, dissemination, solicitation, indorsement or circulation or in any other way to induce directly or indirectly any person to enter or not enter into any obligation or acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan." N.J.S.A. 56:8-

1(a).  Finally, "merchandise" is defined as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."  N.J.S.A. 56:8-1(c).

### B. Count Five Fails to State a Claim Under the NJCFA

At this procedural juncture, accepting the facts as pleaded in the FAC, it is clear that the MOU was not the product sold, as Defendants argue.  Rather, Defendants' ability to offer loan administration services was the product, as the City submits.  The MOU served as the reduction to writing of the contract for the offered loan administration services.  However, this is not dispositive of the ultimate issue.  The Court must turn to whether loan administration services fall within the definition of "merchandise" under the NJCFA.

In evaluating claims under the NJCFA, relying on New Jersey court decisions, the Third Circuit has determined that "complex tax-avoidance schemes" that were "necessarily marketed to a discrete and specific class of capable investors—not the general public" did not fall within the definition of "merchandise," and so affirmed a district court's dismissal of an NJCFA claim.  *Cetel*, 460 F.3d at 514–15.

Similarly, the Appellate Division has determined that a contract "for the installation and implementation of a complex computer system . . . did not constitute a simple purchase of computer software sold to the public at large."  *Princeton Healthcare Sys. v. Netsmart N.Y., Inc.*, 422 N.J. Super. 467, 473–74 (App. Div. 2011).  The court in *Princeton Healthcare* reasoned that "[t]he contract did not provide for simply the installation of a standardized computer software program but rather the design of a custom-made program to satisfy [the purchaser]'s unique needs and [the seller]'s active participation in implantation of this program."  *Id.* at 474.  The court also recognized the extensive negotiations between the parties to the contract and held that "[t]his kind of heavily negotiated contract between two sophisticated corporate entities does not

constitute a 'sale of merchandise' within the intent of the [NJ]CFA." *Id.* (citing *Finderne Mgmt. Co., Inc. v. Barrett*, 402 N.J. Super. 546, 570 (App. Div. 2008)).

Other courts have also dismissed NJCFA claims relying on services or goods that are only offered to a select group of individuals. *See, e.g.*, *Centrum Fin. Servs., Inc. v. Chi. Title Ins. Co.*, Civ. No. 09-3300 (SRC), 2010 WL 936201, at *4 (D.N.J. Mar. 12, 2010) (rejecting NJCFA claim for title insurance); *Khan v. Conventus Inter-Ins. Exchange*, 440 N.J. Super. 372, 376–77 (Law Div. 2013) (rejecting NJCFA claim for medical malpractice insurance because physicians only represent 0.27% of the general population in New Jersey).

On the other side of the issue, at least one judge in this district has determined that the NJCFA can encompass claims for merchandise that is "expensive, uncommon, or only suited to the needs of a limited clientele." *See, e.g.*, *Prescription Counter v. AmerisourceBergen Corp.*, Civ. No. 04-5802 (SRC), 2007 WL 3511301, at *14 (D.N.J. Nov. 14, 2007). Similarly, the judge in *CDK Global, LLC v. Tulley Automotive Group, Inc.*, Civ. No. 15-3103 (KM), 2016 WL 1718100, at *6–7 (D.N.J. Apr. 29, 2016) found that the NJCFA would apply to the lease of computer equipment when it was used during the regular course of business and alleged to be marketed to thousands of businesses.

Additionally, the New Jersey Supreme Court has found that "a complex transaction . . . combining the conveyance of title to the property, an agreement for real estate related services, a trust with the authority to manage the property and a buy-back option is not exempt from the [NJ]CFA by virtue of its unique combination of terms." *D'Agostino v. Maldonado*, 216 N.J. 168, 187–89 (2013). The New Jersey Supreme Court has also found that the NJCFA applies to the sale of credit, *see Lemelledo*, 150 N.J. at 256, although this does not carry the day for the City, because Defendants were not the ones selling credit.

9

The existence of substantial authority on both sides of this issue is not a new problem. In recognizing this apparent conflict of authorities over a decade ago, Judge Greenaway, then District Judge, reasoned that where courts permitted claims to go forward seemingly about goods not available to the general public, those goods were generally standardized and did not require individualized bargaining. *Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 509 (D.N.J. 1999). But where claims were not permitted to proceed, those usually dealt with specific agreements and individualized negotiations. *Id.*

The Court agrees that the distinction drawn by Judge Greenaway in *Naporano* accurately reflect the lines of cases, even accounting for the continued development in the case law since *Naporano* was decided. Turning to the facts alleged here, the MOU was a contract for Zemurray's loan administration services. Loan administration services are a complex service that will require individualization to suit the needs of the parties to the contract, and the general consumer public is not seeking loan administration services.

While it is true that Zemurray's website advertised services to the general consumer public as alleged in the FAC, those services are distinct from the services the City actually contracted for. Defendants on the website advertised their loan services to small businesses, a business that is distinct from offering loan administration services to loan originators, which is what the City contracted for. Under the facts as alleged in the FAC, the services do not fall within the meaning of "merchandise" under the NJCFA, and so the FAC fails to state a claim under the NJCFA. Accordingly, Defendants' Motion will be granted.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion will be granted, and Count Five of the FAC will be dismissed. The City must file an amended complaint within fourteen (14) days that removes Count Five and also affirmatively and accurately pleads citizenship of *each* named defendant. An appropriate order accompanies this opinion.

Date: June  13th , 2016

                                         s/ Robert B. Kugler
                                         ROBERT B. KUGLER, U.S.D.J.