**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY – CAMDEN VICINAGE**

| | |
|---|---|
| THE CITY OF ATLANTIC CITY,<br><br>              Plaintiff,<br><br>      v.<br><br>ZEMURRAY STREET CAPITAL, LLC, W.<br>WESLEY DRUMMON, TENNESSE BUSINESS &<br>INDUSTRIAL DEVELOPMENT CORPORATION<br>d/b/a TN BIDCO, GARY A. LAX, MICHAEL J.<br>LAX, LANTANA FAMILY TRUST 1, TAIPAN<br>HOLDINGS, LLC, ABC PARTNERSHIPS 1-10<br>(fictitious defendants), JOHN DOE (1-10), MARY<br>DOES (1-10), XYZ CORPORATION (1-10),<br>FICTITIOUS PERSONS AND ENTITIES, DEF<br>SHAREHOLDERS, TRUSTS, and HOLDING<br>COMPANIES (1-10).<br><br>              Defendants | Civil Action No.<br><br>1:14-cv-05169-RBK-AMD |

**JOINT FINAL PRETRIAL ORDER**

**APPEARANCES:**

On behalf of Plaintiff, The City of Atlantic City:

> Richard D. Trenk, Esq.
> Trenk, DiPasquale, Della Fera & Sodono, P.C.
> 347 Mt. Pleasant Avenue, Suite 300
> West Orange, New Jersey 07052
> Tel: (973) 243-8600
> Fax: (973) 243-8677
> rtrenk@trenklawfirm.com

On behalf of Defendant, W. Wesley Drummon:

> Felix P. Gonzalez, Esq.
> 3403 Iron Rock Court
> Pennsauken, New Jersey 08103
> Tel: (215) 901-7832
> Fax: (888) 511-1940
> felixatty@yahoo.com

On behalf of Defendant, Zemurray Street Capital, LLC:

Cheryl L. Cooper, Esq.
The Law Offices of Cheryl L. Cooper
342 Egg Harbor Road, Suite A-1
Sewell, New Jersey 08080
Tel: (856) 437-5800
Fax: (856) 437-5599
Cheryl.cooper@cooperlawnj.com

**PART I.      PLAINTIFF'S JURISDICTION AND BRIEF SUMMARY OF THE CASE:**

In July of 2012, the City of Atlantic City (the "City") began discussions with Defendant Wesley Drummon ("Drummon") regarding the implementation of a lending program (the "Lending Program") for the City.  Drummon partially owns and controls Defendant Zemurray Street Capital, LLC ("Zemurray"), the company with which the City was to implement the Lending Program.  The Lending Program was presented by Drummon as a way to (i) assist the City's small business owners in establishing and expanding businesses in the City by providing capital and offering financing; and (ii) assist residents of the City to purchase and rehabilitate homes located in the City by offering residential loan origination services, refinancing programs, and mortgage assistance to those in need.

After a few months of discussions, Drummon submitted to the City an "Investment Proposal" regarding the Lending Program.  Drummon's proposal sought $3 million in City funds to invest in a loan fund (the "Loan Fund"), which Drummon asserted would: (i) grow and provide the funding for the loans under the Lending Program; (ii) be used to create "sub-advisor" relationships in furtherance of the Lending Program; and (iii) enable Zemurray to contract with Defendant TN BIDCO ("TN BIDCO") to provide the lending for the Lending Program.  The proposal represented that Zemurray would underwrite $40 million in SBA and mortgage loans.  The proposal also represented that "[b]ased on conservative projected income, [Zemurray] firmly

2

believes that it will return the $3 million investment to the [City] within six months of funding."
The proposal never mentioned, nor was it ever discussed between the parties, that Zemurray
planned on purchasing TN BIDCO in order to implement the Lending Program.

Unbeknownst to the City, Drummon was already engaged into negotiations for Zemurray's
purchase of TN BIDCO prior to presenting the Lending Program to the City.  Beginning in 2012,
one month before proposing the Lending Program to the City, Drummon began negotiations with
TN BIDCO's former Chief Executive Officer, Jim Thigpen ("Thigpen"), for Zemurray's purchase
of all outstanding stock of TN BIDCO.  In January of 2013, Drummon submitted a Change of
Control Application to the Tennessee Department of Financial Institutions (the "TNDFI") for
regulatory approval of Zemurray's proposed purchase of TN BIDCO. In February 2013, the
TNDFI responded to the application with various concerns including the source of funding for the
purchase of TN BIDCO as well as Drummon's apparent plan to originate residential real estate
loans and consumer loans, activities not permitted for a Tennessee BIDCO.

In a series of letters between Drummon and the TNDFI thereafter, Drummon made a
number of representations to alleviate the TNDFI's concerns.  Drummon stated that the source of
funding for the purchase of TN BIDCO would be equity capital from the members of Zemurray.
Drummon also affirmatively stated, more than once, that TN BIDCO would not participate in
originating residential mortgage loans and that it would not service residential mortgage loans
where any direct contact with the consumer was anticipated.  In response to requests for same,
Drummon represented that Zemurray's total liabilities and members equity totaled $5,637,681.

Eventually, after months of communications, the TNDFI advised Zemurray that, among
other things, a $5 million initial capital injection was required for its application to be approved.

That sum was reduced to $3 million in August of 2013; this reduction is consistent with the City's decision to reduce its financing of the Lending Program to $3 million.

During this time, Drummon continued his talks with the City about the Lending Program and, by May 2013, was negotiating the terms of the Loan Fund.  On May 31, 2013, a "Memorandum of Understanding" (the "Contract") was executed by the parties.  The purpose of the Contract was set forth as follows:

> The City desires to establish a loan (the "Loan Fund") in which the monies will be used to assist: (a) small business owners in obtaining financing that will promote business growth and job creation in the City, (b) individuals in obtaining affordable mortgages and/or refinancing or modifying their existing mortgages on properties located in the City, and (c) individuals with rehabilitation and development of other housing stock in the City.

The material terms of the Contract were:

1.  The term of the Loan Fund was to be five (5) years, beginning May 31, 2013;

2.  Quarterly reports to be made by Zemurray to the City regarding the use of the monies in the Loan Fund for the lending purposes set forth in the Contract;

3.  The City would place up to $5 million in cash into the escrow account (upon the execution of an escrow agreement), with the initial amount being no less than $3 million;

4.  The monies held in the escrow account were to be used "to establish the Loan Fund and shall be released from escrow only pursuant to the terms of the escrow agreement";

5.  If the Loan Fund was not fully funded by the City, i.e. with the maximum $5 million within six (6) months of its establishment, Zemurray was to "reduce its estimates for aggregate lending under the Loan Fund and provide such estimates to

4

the Mayor's Office within thirty (30) calendar days after such six (6) month period";

6. Zemurray would "oversee implementation of the Loan Fund" and would "use [TN BIDCO] to lend the monies in the Loan Fund";

7. The Contract expressly stated that TN BIDCO had the lending expertise to carry out the purposes of the Contract and that it was designated as a preferred lender by the Small Business Administration ("SBA");

8. At the conclusion of the Loan Fund term, Zemurray "will ensure that the City's monies used to establish the Loan Fund are returned to the City within thirty (30) calendar days."

On June 18, 2013, the New Jersey Department of Community Affairs granted partial approval for the Lending Program, with a maximum funding limit of $3 million. On July 11, 2013, the City Council adopted an Ordinance authorizing the establishment of the $3 million Loan Fund.

On July 19, 2013, the City and Zemurray executed the Escrow Agreement. The Escrow Agreement provided that the City, per the May 31, 2013 Contract, was required to deposit $3 million with City National Bank (the "Escrow Account"). The Escrow Agreement permitted instructions to be given to City National Bank regarding the Escrow Account only upon the direction of authorized signatories on the account listed in Schedule A attached to the Escrow Agreement. The authorized signatories for the City were Mayor Lorenzo Langford and City Business Administrator Ronald Cash; Drummon was the authorized signatory for Zemurray.

On August 8, 2013, per the Escrow Agreement, the City wired $3 million from its account at Sun National Bank to the Escrow Account. The wire instructions for the $3 million stated, "City National Bank of New Jersey Zemurray Street Capital LLC, Escrow Acct. FBO [For the Benefit

5

Of] City of Atlantic City." The wire instructions also stated, "[P]ayment to establish Mayor's Loan Pool Program."

On August 23, 2013, fifteen (15) days after the City wired the $3 million into the Escrow Account, Drummon, on behalf of Zemurray, wired the entire $3 million from the Escrow Account to TN BIDCO's account at First Bank in Lexington, Kentucky. Neither Zemurray nor Drummon ever advised the City that the $3 million was being transferred from the Escrow Account.

TN BIDCO's closing statement, dated August 23, 2013, delineates how most of the City's $3 million was disbursed once received by TN BIDCO. According to the closing statement, on August 23, 2013, $1,535,323 was paid to the TN BIDCO shareholders to purchase all outstanding stock and $692,363.77 was used to partially pay off a line of credit allegedly due to Citizens Tri-County Bank. TN BIDCO wired $20,000 to Drummon, the reason for which is unknown. TN BIDCO wired $5,000 to its law firm for costs and legal fees for the transaction. On August 30, 2013, TN BIDCO withdrew $600,000 from its checking account and, according to bank statements, apparently deposited in an account with Farmers & Merchants Bank. Thus, a total documented amount of $2,852,686.77 was disbursed by TN BIDCO from the $3 million received from the Escrow Account; leaving $147,313.30 unaccounted for. The City never agreed that any part of the Loan Fund could be used to acquire TN BIDCO or be utilized for any purpose relating to such an acquisition. No such representation, request or agreement was ever made.

A little less than one year later, in May of 2014, the TNDFI informed Zemurray that its application for control of TN BIDCO had been approved. However, because Zemurray failed to inject $3 million of capital into TN BIDCO, instead using part of it to buyout existing TN BIDCO shareholders, its proposed business plan was not approved. Accordingly, Zemurray was advised that TN BIDCO, under its control, was not authorized to conduct any new activity or services.

6

Immediately upon gaining control of TN BIDCO, Zemurray, through Defendant Gary Lax ("Lax"), terminated all of TN BIDCO's long-time personnel except for Thigpen.  Lax also installed his brother, Michael Lax, as the *de facto* CEO of TN BIDCO, despite Michael having no regulatory approval to serve in any such executive role.  These personnel changes violated the SBA's management requirements and, accordingly, in January 2015, the SBA assumed control of TN BIDCO's portfolio and assigned servicing of its accounts to another institution.

Meanwhile, by the end of the third quarter of 2013, the City, completely unaware of Zemurray's acquisition and takeover of TN BIDCO, requested a bank statement from City National Bank regarding the $3 million in the Escrow Account.  The bank responded that the $3 million was no longer in the Escrow Account.  This was the first time the City became aware that the $3 million was no longer in the Escrow Account.

By March of 2014, Zemurray had not sent the City a single status report or any other information regarding the Lending Program.  By this point, the City was sufficiently concerned regarding the location and use of its $3 million.  Accordingly, on March 19, 2014, the City's Deputy Solicitor spoke to Drummon via telephone and memorialized their conversation via email thereafter.  The email conveyed the City's concerns, demanded an accounting of funds and requested the funds remain intact and frozen until the City was satisfied the funds were secure and being used for the purposes set forth in the Contract.

For approximately two (2) weeks thereafter, the City called and emailed Drummon repeatedly, receiving delayed and vague responses in return.  During this time, on March 24, 2014, Zemurray submitted its first and only status report regarding the Loan Fund; the report consisted of two (2) pages with no supporting documentation and completely unsubstantiated.  By April 2014 it had become clear that the City's $3 million was gone and could not be recovered by

7

Drummon.  On April 3, 2014, the City and Drummon discussed executing an agreement memorializing the parties' intentions to disband the Lending Program and for Zemurray to refund the City its funds; this discussion was memorialized and confirmed via emails between the City's Deputy Solicitor and Drummon.

Thereafter, from April 7, 2014 through May 28, 2014, the City attempted to contact Drummon numerous times but received no response.  On May 7, 2014, the City Council adopted a resolution authorizing the cancellation of the Contract and demanding the return of funds to the City.  Despite numerous demands, the City has not received any of the $3 million it placed in the Escrow Account.

From the inception of the Lending Program on May 31, 2013 until its termination on May 7, 2014, not a single small business loan was financed; not a single mortgage was originated and/or refinanced for any property located in the City; and not a single individual was assisted with rehabilitation and/or development of other housing stock in the City.

On December 29, 2017, following the City's motion for summary judgment, the Court granted the City's breach of contract claim against Zemurray.  The basis of the City's breach of contract claim was Zemurray's failure to perform its reporting obligations, which were required under the Contract.  Accordingly, the City seeks to enter a monetary judgment against Zemurray. The balance of the claims against Zemurray and Drummon are ripe for trial.

The incidents that give rise to this cause of action occurred within this jurisdiction and within three years of the filing of the original complaint.

Venue is proper pursuant to 28 U.S.C. 1391 as all of the acts or omissions which give rise to this cause of action occurred within the district.

Jurisdiction is proper pursuant to diversity jurisdiction pursuant to 28 U.S.C. 1332(a)(3).

<u>Defendants' Objection:</u>

Defendants object to this entire portion of the Plaintiff's FJPTO. The Brief summary is supposed to be presented as a neutral statement that can be read to the jury indicating what the case is about. This "brief summary" is taken from the Plaintiff's SJ motion and not neutral. It is Defendants' position that the Defendants' version is properly presented and should be utilized. The same objection is applied to the Plaintiff's jurisdiction and venue. It does not meet the requirements under the Rules.

**PART I.       DEFENDANTS' JURISDICTION AND BRIEF SUMMARY**
**              OF THE CASE:**

**JURISDICTION & VENUE**

This Court has complete jurisdiction over this matter based upon diversity of citizenship. Atlantic City is a municipality in the State of New Jersey. Defendant, ZeMurray Street Capital (hereinafter "ZSC") is a Delaware Limited Liability Company. Defendant Drummon is a resident of the State of New York. The amount in controversy is over $75,000.00. Venue is proper in the U.S. District Court – Camden due to the diversity of jurisdiction of the parties.

**BRIEF SUMMARY OF THE CASE**

The City of Atlantic City (herein "the City") entered into a contract with Defendant ZSC to "oversee the implementation" of a loan program (hereinafter "Loan Fund" or "Fund"). The MOU stated that ZSC would use TN BIDCO to lend the monies in the Loan Fund. The MOU also contained terms & conditions regarding "Small Business" Lending Programs & Residential Lending Programs. The purpose of the program was to: (a) assist small business owners in obtaining financing that will promote business growth and job creation in the City; (b) assist individuals in obtaining affordable mortgages and/or refinancing or modifying their existing mortgages on properties located in the City; and (c) assist individuals with rehabilitation and development of other housing stock in the City. The term of the Loan Fund was to be for five (5)

years and 30 days from the contracting date, May 31, 2013. The money used to establish the Fund was to be returned within 30 days of the end of the term (*i.e.* July 1, 2018).

The "contract" Atlantic City and ZSC entered into consisted of a memorandum of understanding (hereinafter "MOU") and an Escrow Agreement. The contract between Atlantic City and ZSC was approved and voted upon by the Mayor and Council of Atlantic City. The MOU was signed by Defendant Wesley Drummon, as the manager of ZSC and signed by the then Mayor of Atlantic City, Lorenzo T. Langford.

The MOU provided that Atlantic City would deposit $3 million and up to a maximum of $5 million into the loan fund. The Escrow Agreement indicated the individual(s) who were authorized to withdraw funds from the designated account. The MOU required that ZSC would provide the Mayor's Office with a report setting forth the use of the money that was in the loan fund "for the lending purposes set forth in this MOU." These reports were due within "45 calendar days after the end of each calendar quarter." Additionally, the MOU provided that if the loan fund was not fully funded within 6 months of its establishment by the City then ZSC would provide such reduced estimates to the Mayor's office within 30 calendar days after such six (6) month period.

Finally, the MOU states, "the monies held in the escrow account will be used to establish the Loan Fund and shall be released from escrow only pursuant to the terms of the escrow agreement."

The City of Atlantic City alleges that ZSC breached the MOU by: (1) failing to oversee the implementation of a Lending Program; (2) Using "TN BIDCO" as the lender for the loan program; (3) failing to provide the City of Atlantic City with the appropriate report setting forth the use of

10

the monies in the Fund[1]; (4) failing to provide a reduced estimate of the aggregate lending after the City failed to fully fund the Loan Program. The City claims that the purchase of TN BIDCO by ZSC utilizing some of the monies from the Escrow Account constituted a Breach of Contract and Breach of Implied Covenant of Good Faith and Fair Dealing.

It is Defendants' position that; (1) ZSC did not breach the terms of the MOU in failing to oversee implementation of a Lending Program; (2) did not breach the MOU by "using" TN BIDCO as the designated lender; (3) that the former Mayor instructed Defendant Drummon not to begin actually implementing the program until after the press release of October 17, 2013; (4) Defendants began interviewing applicants and seeking customers for the loans to be promulgated by the MOU; (5) Defendants established a web site, 800 telephone number and took steps to promote the program; (6) Defendants incurred expenses in the start-up of the loan program and devoted time and effort to start the loan program; (7) Defendants provided the quarterly report as required under the MOU until the City breached the terms of the MOU; (8) after the City breached the terms of the MOU there was no point in providing reduced estimates; (9) Defendants complied with the terms of the Escrow Agreement.

With the exception of the Breach of Contract (Count One), it is the Defendants' position that all of the Counts of the Second Amended Complaint must be dismissed prior to trial.  ZSC will seek leave of court to file the applicable motions to dismiss and/or Motions *in limine* to limit the claims to be considered.

---

[1] The Court previously found that ZSC's failure to comply with the MOU reporting obligations constituted a breach of contract.  The Court specifically denied (1) and (2) above. See ECF [171] Page ID 3197, 3198 and 3199.

Plaintiff's Objection:

Defendants' recitation of the facts is erroneous:

1. The Contract stated that "ZSC will oversee the implementation of the Loan Fund and will use TN Business and Industrial Development Company ("BIDCO") to lend the monies in the Loan Fund."

2. The Contract imposed additional time constraints on the Defendants, in addition to what is set forth in the Defendants' facts. Specifically, the Contract required Zemurray to provide the City with quarterly reports setting forth the use of the monies in the Loan Fund. Additionally, the Contract required Zemurray to provide the City with reduced estimates regarding aggregate lending under the Loan Fund since the Loan Fund was not fully funded within six (6) months.

3. As to the Loan Fund, the MOU stated that the monies held in the escrow account, "will be used to establish the Loan Fund and shall be released from escrow only pursuant to the terms of the escrow agreement." The Defendants failed to use the monies consistent with the purpose of the Loan Fund.

4. Defendants' have failed to provide a scintilla of evidence that they took steps in furtherance of the Lending Program.

5. Defendants' statement that they "provided the quarterly report as required under the MOU" is mistaken. On December 31, 2018, this Court held that "[s]ummary judgment is therefore appropriate for breach of contract for [Zemurray's] failure to comply with the Contract's reporting obligations, and the City's motion is granted as to this claim against Zemurray." [Dkt No. 171 at 32].

> **Commented [FG1]:** This objection is unfounded. The first part of this sentence is contained in Defendant's Brief Summary of the Case @ page 9. To address the second half of this objection defendants have added 2 sentences immediately following the first sentence on page 9 under Brief Summary.

> **Commented [FG2]:** This is a disputed fact

# PART II. STIPULATED FACTS:

1. On or about August 28, 2012, Drummon submitted an initial program proposal for the Lending Program to the City.

2. On May 22, 2013, the City Council adopted Resolution No. 450 authorizing execution of a Memorandum of Understanding between Zemurray and the City.

3. **The term of the Loan Fund was five (5) years, beginning May 31, 2013.**

4. On July 11, 2013, the City Council adopted Ordinance No. 35 that authorized the establishment of $3 million for the creation of the Loan Fund.

5. On August 8, 2013, the City wired $3 million from its account at Sun National Bank to the Escrow Account.

# PART III. EACH OF PLAINTIFF'S CONTESTED FACTS:

> **Commented [FG3]:** Defendants have added a sentence infra page 10 incorporating the quoted language herein. This should eliminate defendants objection. The final sentence of Plaintiff's Objection is disputed fact which should not be contained in the "Brief Summary of the Case"

per Court
hearing
m 10/30/18

12

1.    **Plaintiff intends to prove the following contested facts with regard to liability:**

a)  The term "use TN BIDCO" in the Contract meant that Defendants would work with TN BIDCO, through contract or otherwise, including its expertise and regulatory authority, such that TN BIDCO would assist the Lending Program, to the benefit of the City. It did not mean Defendants were authorized to purchase TN BIDCO with the Loan Fund.

b)  Defendants did not use TN BIDCO in furtherance of the purposes of the Contract.

c)  Defendants failed to take any action in furtherance of the Lending Program.

d)  Defendants failed to use the Loan Fund for any purpose relating to the Lending Program.

e)  Defendants' transfer of the Loan Fund from the Escrow Account to purchase TN BIDCO was unauthorized and not permitted under the Contract.

f)  Defendants induced the City to enter into the Contract by misrepresenting the use of the Loan Fund, concealing its intention to purchase TN BIDCO, and misrepresenting to the City TN BIDCO's ability to originate residential mortgages.

g)  Zemurray is a creditor of the City by way of its unauthorized transfer of City funds from the Escrow Account.

h)  Zemurray transferred the City's funds in order to defraud, delay and hinder the City.

i)  Defendants abused Zemurray's corporate formalities in order to insulate themselves from personal liability.

2.    **Plaintiff intends to prove the following contested facts with regard to damages:**

a)  The City placed $3 million into the Escrow Account for the purpose of funding the Lending Program.

b)  Defendants misappropriated the entire $3 million.

c)  Despite the City's demands for the return of its funds, it has not received any of the $3 million.

d)  Defendants' calculated, elaborate fraudulent scheme against the City, perpetrated during a time of economic duress for the City and under the guise of a lending program for the benefit of its residents and small businesses is egregious conduct that warrants the imposition of punitive damages.

**PART IV.    EACH DEFENDANTS' CONTESTED FACTS:**

13

1.      **Defendants Drummon and ZSC intend to prove the following contested facts with regard to liability:**

a)      ZSC established a loan program.

b)      Drummon met and took loan applications for individuals and businesses.

c)      Drummon utilized Atlantic City office space/conference rooms to meet with loan applicants.

d)      The Atlantic City staff arranged the space where Drummon would meet with loan prospects.

e)      Zemurray hired individuals to design a web site, obtain toll free numbers, advertise the loan program, etc.

f)      Zemurray incurred costs and expenses in implementing the Loan Ptogram.

g)      Mayor Langford instructed Drummon not to meet with applicants until after his press release.

h)      The City of Atlantic City breached the terms of the MOU that caused ZSC to allegedly breach the contract.

i)      Zemurray provided the first quarterly report to the Plaintiff.

j)      The second quarterly report was not due to the Plaintiff until after the Plaintiff breached the contract.

k)      Zemurray failed to provide the reduced aggregate loan amounts when the City did not fully fund the loan program is excuseable due to the fact that Atlantic City breached the contract first.

l)      Any alleged breach by Zemurray was after the Plaintiff breached the contract.

m)      Plaintiff caused their own damages through its breach of contract.

n)      TNBIDCO was qualified to originate the Small Business Association Loans contained in the MOU.

o)      TNBIDCO was qualified to "use" various Federal & State programs so that residential loans are originated to borrowers who meet the eligibility standards established by applicable Federal and State programs for such loans as specified in the contract.

p)      The language in the MOU did <u>not</u> indicate that TN BICO was going to <u>originate</u> residential loans.

q)      The MOU is silent as to ZSC's use of the loan funds for anything other than in furtherance of the loan program.

r)      The MOU did not contain any clause, which permitted early termination of the program by either party.

s)      The MOU was drafted by attorneys for the City of Atlantic City and outside counsel.

t)      The final version of the MOU that is the executed version dated May 31, 2013, was drafted by the attorneys representing Atlantic City.

u)      The Escrow Agreement did not prohibit ZSC from withdrawing funds.

v)      The Escrow Agreement permitted only a representative of ZSC to withdraw the funds from the Escrow Account.

w)      The only individual who had authority on behalf of ZSC was Defendant Drummon.

x)      There is no evidence that Drummon's actions were outside the scope of his obligations as a corporate officer and agent for Zemurray or that he acted for personal gain.

y)      Plaintiff has no evidence that would pierce the corporate veil and/or that ZSC and/or Drummon are abused corporate formalities.

z)      There is no evidence that Drummon engaged in any "fraudulent concealment".

aa)     There is no evidence that ZSC and/or Drummon committed a fraud against the City.

bb)     There is no evidence that Drummon, while acting on behalf of ZSC, transfer of funds were done with a fraudulent intent.

cc)     There is no evidence of "wrongful acts" by ZSC and Drummon so the City can't prove their claim of setting up a "constructive trust" and/or their claim for "punitive damages".

dd)     The final version of the MOU which was executed by the parties was prepared by the Plaintiff's counsel (in-house).

ee)     The Plaintiff failed to utilize the MOU that was drafted by their outside attorneys.

**Defendants, ZSC and Drummon, intend to prove the following contested facts with regard to <u>damages</u>:**

    a)    Defendant Drummon withdrew the $3 million from the Escrow Account in compliance with the terms of the Escrow Agreement.

    b)    The MOU was silent as to the withdrawal of funds from the Escrow Account.

    c)    The City breached the contract prior to any alleged breach by the Defendants.

    d)    The loan monies were not due to be returned to the City until July 1, 2018.

    e)    Due to the City's breach of the MOU Defendants do not owe the City the $3 million they claim as damages.

    f)    Any monies expended by Zemurray in furtherance of the loan program, salaries, expenses should be offset any/all moines, fees, costs expended by Zemurray.

## PART V.    <u>WITNESSES and SUMMARY OF TESTIMONY:</u>

**A.    <u>Plaintiff's Witnesses and Summary of Their Testimony</u>**

    1.    Plaintiff intends to call the following witnesses with regard to liability and anticipates they will testify as follows:

    (a)    **Wesley Drummon** owns and controls Zemurray as a member, through his controlling stake in a holding company named Taipan Holdings, LLC, which held 50% interest in Zemurray ("Taipan"). Drummon will testify regarding the negotiations and events leading up to the execution of the MOU and Escrow Agreement, as well as Zemurray's failure to implement the Lending Program. Will further testify regarding the corporate structure of Zemurray. (has previously exercised his Fifth Amendment rights).

    (b)    **Gary Lax**, owns and controls Zemurray as a member through his controlling stake in a holding company named Lantana Family Trust 1, which held a 50% interest in Zemurray ("Lantana Family Trust"). Lax will testify regarding his ownership and control of Zemurray and purchase of TN BIDCO. Will further testify regarding he corporate structure of Zemurray. (has previously exercised his Fifth Amendment rights).

16

(c)    **Andrew Weber, Esq.** was outside counsel during the relevant time period and will testify about his communications with Drummon regarding the implementation of the Lending Program and the drafting of the MOU and Escrow Agreement.

       Defendants' Objection: Defendants object as this individual was listed on Plaintiff's Rule 26 Disclosure, but no notice as to knowledge of the facts or proposed testimony was provided. Further objection is to any assertion of "attorney/client" privilege in the event the court permits Mr. Weber's testimony. No notice was provided as to any preferred testimony. Defendants had no opportunity to depose Mr. Weber who is an attorney.

       Plaintiff's Response: Andrew Weber was listed on Plaintiff's Rule 26 Disclosure and, thus, Defendants had full knowledge that Mr. Weber has information regarding this matter. Moreover, Mr. Weber and Defendant Drummon worked together on the creation of the Lending Program. Thus, Defendants had notice as to Mr. Weber's involvement.

(d)    **Michael P. Stinson**, Director of Revenue and Finance, will testify regarding the Loan Fund, Zemurray's failure to return the $3 million to the City, the City's attempt to locate the funds, and Zemurray's breach of the MOU and Escrow Agreement and related matters.

       Defendants' Objection: Defendants object as this individual was listed on Plaintiff's Rule 26 Disclosure, but no notice as to knowledge of the facts or proposed testimony was provided.

       Plaintiff's Response: Michael Stinson was listed on Plaintiff's Rule 26 Disclosure and, thus, Defendants had full knowledge that Mr. Stinson has information regarding this matter. Moreover, Mr. Stinson's job title, Director of Revenue and Finance, was listed on the Rule 26 Disclosure. Thus, Defendants had full knowledge regarding Mr. Stinson's involvement. The Court rejected Defendants' objection in its December 29, 2017 Opinion. [Dkt No. 171 at 19].

       See also Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 177 F.R.D. 278, 278 (D.N.J. 1997), discussing the issue of "subjects of discoverable information" known by a witness under Rule 26(a)(1)(A), and noting that"[n]owhere in the rule or in the Advisory Committee comments to the rule states that a party is precluded from having a witness testify on a subject not identified in disclosures under Rule 26(a)(1)(A). Moreover, subjects of information undisclosed in a Rule 26 disclosure need not be excluded from evidence if the subjects can be anticipated based on the allegations in the complaint. Id.

(e)    **Michael J. Perugini**, Deputy City Solicitor of Atlantic City, will testify regarding the Lending Program, his attempts to return the funds to the City and Zemurray's breach of the MOU and Escrow Agreement and related matters.

<u>Defendants' Objection:</u> Defendants object as this individual was not listed on Plaintiff's Rule 26 Disclosure.

<u>Plaintiff's Response:</u>  The Court rejected Defendants' objection in its December 29, 2017 Opinion. [Dkt No. 171 at 18-19]. Further, Defendants deposed Michael Perugini on February 10, 2016. As stated in the Court's opinion, "that puts to rest any concern that Defendants were inadequately aware of his involvement in this case." [Dkt No. 171 at 18].

(f)      **Jim Thigpen**, former owner and employee of TN BIDCO will testify regarding the acquisition of TN BIDCO, his conversations with Zemurray and TN BIDCO's ability to carry out the Lending Program and related matters.

<u>Defendants' Objection:</u> Defendants object as this individual was not listed on Plaintiff's Rule 26 Disclosure.

<u>Plaintiff's Response:</u>  As set forth in the Court's December 29, 2017 Opinion, "to say Drummon, who negotiated with Thigpen, did not receive notice of Thigpen's role in this transaction is absurd. Rule 26(a) requires that the opposing party be given fair notice, it does not require a party to lead its opponent to chapter and verse and advocate on its behalf." [Dkt No. 171 at 19]

(g)      **Arthur Liston**, Former Business Administrator City of Atlantic City, will testify regarding the purpose of the Lending Program and his suspicions surrounding the Lending Program and related matters.

<u>Defendants' Objection:</u> Defendants object as this individual was listed on Plaintiff's Rule 26 Disclosure, but no notice as to knowledge of the facts or proposed testimony was provided.

<u>Plaintiff's Response:</u>  Arthur Liston was listed on Plaintiff's Rule 26 Disclosure and, thus, Defendants had full knowledge that Mr. Stinson has information regarding this matter.  Moreover, Mr. Liston's job title, Former Business Administrator City of Atlantic City, was listed on the Rule 26 Disclosure.  Thus, Defendants had full knowledge regarding the Mr. Stinson's involvement.  Further, the Court rejected Defendants' objection in its December 29, 2017 Opinion.. [Dkt No. 171 at 19].

(h)      **Irving B. Jacoby, Esq**., Former City Solicitor of Atlantic City, will testify regarding the purpose of the Lending Program and related matters.

<u>Defendants' Objection:</u> Defendants object as this individual was not listed on Plaintiff's Rule 26 Disclosure.

18

<u>Plaintiff's Response</u>: Irving Jacoby was listed on Defendants' Rule 26 Disclosure. Further, Mr. Jacoby signed the Memorandum of Understanding.  Thus, Defendants had full knowledge and notice regarding Mr. Jacoby's involvement.

(i)      **P. Nelson**, City National Bank, will testify about the Escrow Agreement and the wiring of funds.

> <u>Defendants' Objection</u>: Defendants object as this individual was listed on Plaintiff's Rule 26 Disclosure, but no notice as to knowledge of the facts or proposed testimony was provided except for information relating to the wire transfer to City National Bank escrow account.

> <u>Plaintiff's Response</u>: P. Nelson was listed on Plaintiff's Rule 26 Disclosure. Further, as set forth by Defendants in their objection, Defendants are fully aware of Mr. Nelson's involvement relating to the wire transfer to the City National Bank escrow account. Thus, Defendants had full knowledge and adequate notice as to P. Nelson's involvement.

(j)      **Lorenzo Langford** - former Mayor of Atlantic City, will testify regarding the purpose of the Lending Program and related matters.

> <u>Defendants' Objection</u>:   Defendants object as this individual was listed on Plaintiff's Rule 26 Disclosure, but no notice as to knowledge of the facts or proposed testimony was provided.

> <u>Plaintiff's Response:</u> Lorenzo Langford was listed on Defendants' Rule 26 Disclosure as well as Plaintiff's Rule 26 Disclosure.  Thus, Defendants had full knowledge and notice regarding Mr. Langford's involvement.

(k)      **Oscar Viguera –** partner of Zemurray Street Capital, will testify regarding the structure of Zemurray and Zemurray's involvement with the Lending Program.

> <u>Defendants' Objection</u>: Defendants object as this individual was not listed on Plaintiff's Rule 26 Disclosure.  Mr. Viguera is not a member of ZSC and has not been a member during any part of this entire process. No notice was ever provided as to his knowledge or information.

> <u>Plaintiff's Response</u>: Oscar Viguera was listed on Plaintiff's Rule 26 Disclosure and is a partner of Mr. Drummon.  Thus, Defendants had full knowledge and adequate notice regarding Mr. Viguera's involvement.

(l)      **Ronald Cash**, Former Business Administrator of Atlantic City, will testify regarding the purpose of the Lending Program.

> <u>Defendants' Objection</u>: Defendants object as this individual was listed on Plaintiff's Rule 26, but no notice as to knowledge of the facts or proposed testimony

was provided. By way of further objection, this witness has no personal interaction in the negotiation of the MOU and the Lending Program.

Plaintiff's Response: Ronald Cash was listed on Plaintiff's Rule 26 Disclosure and his title, Former Business Administrator City of Atlantic City, was also disclosed. Thus, Defendants had full knowledge and adequate notice regarding Mr. Cash's involvement.

(m)  **Incorp. Services, Inc.,** registered agent of Zemurray Street Capital, will testify regarding Zemurray's involvement with the Lending Program.

Defendants' Objection: Defendants object as this individual was not listed on Plaintiff's Rule 26 Disclosure. By way of further Objection, testimony of this entity is not within the scope of their knowledge.

Plaintiff's Response: "Incorp. Services, Inc. – Registered Agent- ZeMurray Street Capital" was listed on Plaintiff's Rule 26 Disclosure. Thus, Defendants had full knowledge and adequate notice regarding Incorp. Service's involvement.

(n)  **Braun Littlefield, Esq.,** Former City Solicitor of Atlantic City, will testify regarding he purpose of the Lending Program and execution of the MOU and Escrow Agreement.

Defendants' Objection: Defendants object as this individual was listed on Plaintiff's Rule 26 Disclosure, but no notice as to knowledge of the facts or proposed testimony was provided. By way of further objection, this witness has no personal interaction in the negotiation of the MOU and the Lending Program.

Plaintiff's Response: Braun Littlefield, Esq. was listed on Plaintiff's Rule 26 Disclosure and his title, Solicitor, was also disclosed. Thus, Defendants had full knowledge and adequate notice regarding Mr. Littlefield's involvement.

(o)  **Alex Little, Esq.,** attorney representing Jim Thigpen, will testify regarding the acquisition of TN BIDCO and TN BIDCO's ability to carry out the Lending Program.

Defendants' Objection: Defendants object as this individual was listed on Plaintiff's Rule 26 Disclosure, but no notice as to knowledge of the facts or proposed testimony was provided. By way of further Objection, this individual does not possess any first-hand knowledge relevant to the facts of this matter.

Plaintiff's Response: Alex Little, Esq. was listed on Plaintiff's Rule 26 Disclosure and his title, Solicitor, was also disclosed. Thus, Defendants had full knowledge and adequate notice regarding Mr. Littlefield's involvement.

(p)  **Eddie Lax**, employee of the City, will testify regarding his communications with Drummon and the City regarding implementation of the Lending Program.

(q)  **Michael Lax** will testify regarding his involvement with Zemurray and TNBIDCO.

2.  Plaintiff intends to call the following witnesses with regard to damages and anticipates they will testify as follows:

1.  **Michael P. Stinson**, Director of Revenue and Finance, will testify regarding the Loan Fund and Zemurray's failure to return the $3 million to the City, the City's attempt to locate the funds, and Zemurray's breach of the MOU and Escrow Agreement.

    Defendants' Objection: Defendants object as this individual was listed on Plaintiff's Rule 26 Disclosure, but no notice as to knowledge of the facts or proposed testimony was provided.

    Plaintiff's Response: Michael Stinson was listed on Plaintiff's Rule 26 Disclosure and, thus, Defendants had full knowledge that Mr. Stinson has information regarding this matter. Moreover, Mr. Stinson's job title, Director of Revenue and Finance, was listed on the Rule 26 Disclosure. Thus, Defendants had full knowledge regarding Mr. Stinson's involvement. The Court rejected Defendants' objection in its December 29, 2017 Opinion. [Dkt No. 171 at 19].

    See also Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery, 177 F.R.D. 278, 278 (D.N.J. 1997), discussing the issue of "subjects of discoverable information" known by a witness under Rule 26(a)(1)(A), and noting that"[n]owhere in the rule or in the Advisory Committee comments to the rule states that a party is precluded from having a witness testify on a subject not identified in disclosures under Rule 26(a)(1)(A). Moreover, subjects of information undisclosed in a Rule 26 disclosure need not be excluded from evidence if the subjects can be anticipated based on the allegations in the complaint. Id.

2.  **Michael J. Perugini**, Deputy City Solicitor of Atlantic City, will testify regarding the Loan Fund and Zemurray's failure to return the $3 million to the City, the City's attempt to locate the funds, and Zemurray's breach of the MOU and Escrow Agreement.

    Defendants' Objection. Defendants object as this individual was listed on Plaintiff's Rule 26 Disclosure, but no notice as to knowledge of the facts or proposed testimony was provided.

    Plaintiff's Response: The Court rejected Defendants' objection in its December 29, 2017 Opinion. [Dkt No. 171 at 18-19]. Further, Defendants deposed Michael Perugini on February 10, 2016. As stated in the Court's opinion, "that puts to rest

any concern that Defendants were inadequately aware of his involvement in this case." [Dkt No. 171 at 18].

**PART V.    WITNESSES and SUMMARY OF TESTIMONY:**

   **B.       Defendants' Witnesses and Summary of Their Testimony**

       1.       Defendants ZSC and Drummon reserve the right to call any and all witnesses listed in Plaintiff's section of the FJPTO.

       2.       Defendants ZSC and Drummon intend to call the following individuals in addition to those listed in Plaintiff's portion.

           a) Michael Bonner, Esquire. Outside counsel for the City who was involved in the drafting and revising of the MOU.  He is expected to identify various drafts of the MOU and is also expected to testify that the executed MOU is not the document he drafted.

           Mr. Bonner will testify to the context of emails attached to Lax's Motion for Summary Judgment in regards to the MOU.

           Plaintiff's Objection.   Plaintiff objects as this individual was not listed on Defendants' Rule 26 Disclosures.

           b) Eddie Lax. Mr. Lax is expected to testify as to the emails concerning the MOU and its execution, emails for Mr. Drummon using City Hall to meet prospective clients, networking and when the Mayor's office was to announce to the public the availability of the Lending Programs

           c) Irving Jacoby, Esquire.  Mr. Jacoby was the Deputy City Solicitor who signed the MOU.  Mr. Jacoby is expected to testify as to the authentication of the signatures on the MOU.  He is also expected to testify as to his knowledge of the drafting & execution of the MOU.

**PART VII.   EXHIBITS**

A.    Plaintiff's Exhibits

Plaintiff intends to introduce the following exhibits into evidence:

   **1. See attached Exhibit List with exhibits marked P1 through P46. [DEFENDANTS**

   **HAVE NOT OBJECTED TO PLAINTIFF'S EXHIBIT LIST]**

**B.**     <u>Defendants' Exhibits</u>

Defendants incorporate all documents listed on Plaintiff's Exhibit List as those Defendants may use at the time of trial.

Additionally, Defendants intend to utilize and introduce Exhibits listed on Defendants' Exhibit List attached hereto and made a part hereof.

<u>Plaintiff's Objection</u>.  Plaintiff objects since Defendants have <u>not</u> provided an Exhibit List to Plaintiff.  Upon receipt and review, Plaintiff reserves the right to assert objections to Defendants' exhibits.

**PART VIII.   <u>LAW</u>**

**B.     <u>Plaintiff</u>**

1.     Plaintiff reserves the right to supplement this response.  Plaintiff's statement of the legal issues in this case:

<u>Defendants' Objection:</u> Defendants object to any additions by the City after this Joint Final PreTrial Order is entered.

**Breach of Contract Against Defendant Zemurray:**

- Did Zemurray breach the Contract by failing to take any action in furtherance of the Lending Program?
  <u>Defendants' Objection</u>.  Objection only to the term "contract".  Assuming it refers to MOU, no objection.
  <u>Plaintiff's Response</u>: The term Contract is defined on page 4 of the Pretrial Order.

- Did Zemuray breach the Contract and the Escrow Agreement by transferring the entirety of the $3 million Loan Fund from the Escrow Account to purchase TN BIDCO?
- Objection to the term "contract".  Objection to the format of the question, it is compound.  Objection to any question of law regarding the Defendants' breach of the Escrow Agreement as it is not pled in the Complaint, or Amended the Complaints.
  <u>Plaintiff's Response</u>: The Complaint sets forth in detail the Contract and the Escrow Agreement and has two breach of contract causes of action.  The Contract stated that the monies held in the escrow account, "will be used to establish the Loan Fund and shall be released from escrow only pursuant to the terms of the escrow agreement." Plaintiff intends to prove that since Defendants breached the terms of the Escrow Agreement by utilizing the funds improperly and thereby breached the Contract as well.

**Breach of the Implied Covenant of Good Faith and Fair Dealing Against Defendant Zemurray**

- Did Zemurray breach the implied covenant of good faith and fair dealing by failing to implement the Lending Program for the benefit of the City?

  <u>Defendants' Objection</u>: Obection to the question to the extent that this question presumes The Defendants failed to take steps to implement a lending program. This question is also outside of the question above regarding the furtherance of the loan program.

- Did Zemurray breach the implied covenant of good faith and fair dealing by misappropriating the Loan Fund for Zemurray's own benefit?

  <u>Defendants' Objection</u> This question of law assumes misappropriation of funds with no proofs. Misappropriation of funds is not a cause of action pled in the complaint.

  <u>Plaintiff's Response</u>: Plaintiff does not assert a cause of action for misappropriation of funds, rather, due to Zemurray's misappropriation it breach the implied covenant of good faith and fair dealing.

- Did Zemurray enter into the Contract and Escrow Agreement in bad faith?

  <u>Defendants' Objection</u>. This is a compound question. By way of further objection, the Escrow Agreement was required under the contract. Additionally, he Complaint does not contain any allegations that the Escrow Agreement was entered into in bad faith. The Complaint does not claim that the Defendants breached the Escrow Agreement.

  <u>Plaintiff's Response</u>: Plaintiff's Complaint contains a Breach of Good Faith and Fair Dealing Claim. The Escrow Agreement is fully set forth in the Complaint.

- Did Zemurray engage in conduct that denied the City the benefit of the bargain originally intended by the parties?

  <u>Defendants' Objection</u>. The question is far too broad.


**Common Law Fraud Against Defendants Zemurray and Drummon**

- Did Zemurray and/or Drummon make misrepresentations to the City regarding the anticipated use of the Loan Fund as well as TN BIDCO's ability to facilitate the Lending Program?

24

Defendants' Objection.  This question is compound and refers to two separate Defendants.  The question is over broad and outside of the scope of the facts plead in the Second Amended Complaint.  By way of further objection, the portion of the question "TN BIDCOs ability to facilitate the lending program" is outside the scope of the pleadings.  Further, TN BIDCO was dismissed as a defendant on all counts of the Plaintiff's complaint.  There is no term in the MOU which indicates that TN BIDCO would "facilitate the lending program".

Plaintiff's Response: In New Jersey, one of the elements of common law fraud is "a material misrepresentations." Dewey v. Volkswagen AG, 558 F.Supp.2d 505, 526 (D.N.J. 2008), see also, Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624-625 (1981).  Plaintiff intends to prove fraud which is a cause of action in Plaintiff's Complaint. Plaintiff does not allege TN BIDCO made misrepresentations.

- Did Zemurray and/or Drummon induce the City to enter the Contract so that Defendants could purchase TNBIDCO for their own benefit?

  Defendants' Objection.  This question is outside of the scope of the facts plead in the pleadings.  By way of further objection, the Defendants are two (2) separate entities.  Additionally, this question infers that there was language in the MOU which prohibited the transfer of monies from the Escrow Account, when the contract is silent.  This is asking the jury to interpret the contract, which is impermissible.

  Plaintiff's Response: Plaintiff intend to prove that Defendants induced the City to enter into the Contract.  As set forth in the Court's December 29, 2017 Opinion, this claim appears in the Second Amended Complaint. [Dkt No. 171 at 37]

- Did Zemurray and/or Drummon misrepresent to the City TN BIDCO's ability to originate residential loans?

  Defendants' Objection.  This question is outside of the scope of the facts plead in the pleadings.  By way of further objection, the Defendants are two (2) separate entities.  The Plaintiff's pleadings do not contain any allegations that Defendants misrepresented facts regarding TN BIDCO's ability to originate residential loans.  This question also seeks interpretation of terms that are clearly spelled out in the MOU.

  Plaintiff's Response: In New Jersey, one of the elements of common law fraud is "a material misrepresentations." Dewey v. Volkswagen AG, 558 F.Supp.2d 505, 526 (D.N.J. 2008), see also, Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624-625 (1981).  Plaintiff intends to prove fraud which is a cause of action in Plaintiff's Complaint.

- Did the City reasonably rely on Zemurray and/or Drummon's misrepresentations which resulted in damages?

25

Defendants' Objection: This question is overbroad.  Any "misrepresentations" would need to be consistent with the facts pled in the Second Amended Complaint. By way of further objection, the Defendants are two (2) separate entities.

Plaintiff's Response: In New Jersey, one of the elements of common law fraud is "reasonable reliance." Dewey v. Volkswagen AG, 558 F.Supp.2d 505, 526 (D.N.J. 2008), see also, Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624-625 (1981).  Plaintiff intends to prove fraud which is a cause of action in Plaintiff's Complaint.

- Is Drummon individually liable for his participation in the fraud even though he acted on behalf of Zemurray?

Defendants' Objection:  The Second Amended Complaint fails to properly allege the "fraud" with the required specificity required under Fed. R. Civ. P. 9b.  By way of further objection, this question assumes that there was a "fraud" pled and proven against Drummon.

Plaintiff's Response: Plaintiff's Complaint adequately sets forth a fraud claim against Drummon individually.  Further, the December 29, 2017 Opinion only dismissed the Lax Defendants under Rule 9(b) and the Drummon claim is ripe for trial. [Dkt No. 171 at 40]

**Fraudulent Transfer Against Defendant Zemurray and Drummon**

- Is the City a creditor of Zemurray and/or Drummon when Defendants transferred, without authority, the City's funds that comprised the Loan Fund?

Defendants' Objection. This question is compound.  Defendants are two separate entities.  This question presumes that the funds were transferred without authority when the Escrow Agreement clearly and expressly authorized Drummon to transfer the funds from the escrow account.

Plaintiff's Response: Defendants' objection is incomprehensible.  Plaintiff assumes nothing but rather intends to prove its fraudulent transfer claim.

- Do Zemurray/Drummon and the City stand in a creditor-debtor relationship?

- Defendants' Objection. This question is compound.  Defendants are two separate entities.  This question presumes that the City is/was a creditor of Drummon.  No facts pled by the City contain these allegations.  The question is outside the scope of the pleadings.  There is no allegation and no support of an allegation that the City was ever a creditor or Defendant Drummon.

Plaintiff's Response: Plaintiff adequately pled a fraudulent transfer claim.

26

- Did Zemurray and/or Drummon purchase TN BIDCO with the City' money in order to hinder, delay or defraud the City?

  Defendants' Objection: This question is compound.  Defendants are two separate entities.

**Piercing of the Corporate Veil Against Defendants Zemurray and Drummon**

- Did Drummon abuse Zemurray's corporate formalities in order to shield himself from personal liability in the fraud perpetrated upon the City?

  Defendants' Objection. This question presumes that there was a "fraud" perpetrated against the City when the Court has previously dismissed the fraud count of the Plaintiff's Complaint for lack of specificity.  By way of further objection, this is not the extent of the inquiry necessary to pierce the corporate veil.  By way of further objection, this inquiry is outside the scope of the allegations pled for this count.

  Plaintiff's Response: Defendants' objection is incomprehensible.  Plaintiff assumes nothing but rather intends to prove its veil piercing claim.

- Did Drummon exercise control over Zemurray and utilize and authorize its participation in the fraud for the benefit of his own personal interests?

  Defendants' Objection. This question presumes that there was a "fraud" perpetrated against the City when the Court has previously dismissed the fraud count of the Plaintiff's Complaint for lack of specificity.  By way of further objection, this is not the extent of the inquiry necessary to pierce the corporate veil.  By way of further objection, this inquiry is outside the scope of the allegations pled for this count.

  Plaintiff's Response: Defendants' objection is incomprehensible.  Plaintiff assumes nothing but rather intends to prove its veil piercing claim.

**Constructive Trust/Equitable Lien Against Defendants Zemurray and Drummon**

- Did Zemurray and/or Drummon commit a wrongful act by secretly and impermissibly transferring the City's funds?

  Defendants' Objection: This question is compound.  Defendants are two separate entities.  By way of further objection, Drummon was specifically authorized to instruct City National Bank to release funds from the Escrow Account.  This question is outside the facts of the allegations in the pleadings.

Plaintiff's Response: Defendants' objection is argumentative.  Plaintiff is merely attempting to prove at trial that Defendants committed a wrongful act, and, thus, Plaintiff is entitled to a constructive trust.  D'Ippolito v. Castoro, 51 N.J. 584, 589 (1968) (holding that all that is required to impose a constructive trust is a finding that there was some wrongful act"); see also Dkt No. 171 at 43.

- Were Zemurray and/or Drummon unjustly enriched to the City's detriment?

- Is an equitable lien over Zemurray's transfer to TNBIDCO appropriate?

  Defendants' Objection.  This question is outside the relief sought in the Second Amended Complaint.

  Plaintiff's Response: An equitable lien is a remedy. S.E.C. v. Antar, 831 F. Supp. 380, 398 (D.N.J. 1993) (a "constructive trust…[is] a long-standing remed[y] that [is] within a court's equity powers"); Pell v. E.I. DuPont de Nemours & Co. Inc., 539 F.3d 292, 307 (3d Cir. 2008) (holding that an equitable lien is an equitable remedy).  There is no requirement for the City or any party to plead a remedy

**B.**    **Defendants**

Defendants object to all of Plaintiff's statements contained under this point heading. Plaintiff's submission does not comply with the requirement under the Federal Rules of Civil Procedure.

Defendants also object to Plaintiff's statements throughout this section.  Specifically, "See also, Plaintiff's Motion for Summary Judgment filed in this case." under this point heading.  This is not a proper question of law in the FJPTO.

As such, this whole section of Plaintiff's submission should be stricken.

Defendants' statement of the legal issues in this case:

**Breach of Contract**

- Did the money the City of Atlantic City transferred into the escrow account belong to the City?

  Plaintiff's Objection: The parties have stipulated that on August 8, 2013, the City wired $3 million from its account at Sun National Bank to the Escrow Account.

- Does the City of Atlantic City have standing to bring the claims contained in the Second Amended Complaint?

  Plaintiff's Objection:  On June 7, 2018, during the Pretrial Conference, the Court rejected Defendants' standing argument as untimely.

Defendants' Rebuttal:  The Pretrial Conference was with the Magistrate Judge verbally without any motion.  This issue was raised by Defendant Drummon in his Summary Judgment motion.

- Are the claims of breach of contract ripe for determination?

   Plaintiff's Objection:  On June 7, 2018, during the Pretrial Conference, the Court rejected Defendants' ripeness argument as untimely.

   Defendants' Rebuttal:  The Pretrial Conference was with the Magistrate Judge verbally without any motion.  This issue was raised by Defendant Drummon in his Summary Judgment motion.

- Did the City of Atlantic City breach the MOU Agreement before any breach by Defendant ZSC?

   Plaintiff's Objection:  Defendants have not set forth any facts which would provide support for a breach by the City prior to a breach by Zemurray.

   Defendants' Rebuttal:  Plaintiff's Objection is not correct.  Defendants Lax, and TN BIDCO raised the issue of the City demanding the monies be returned when there was no contract provision for same in the Defendants' Summary Judgment motion.

- Was ZSC's failure to provide the quarterly reports (after the first one was submitted) a material breach?

   Plaintiff's Objection:  On December 31, 2018, this Court held that "[s]ummary judgment is therefore appropriate for breach of contract for [Zemurray's] failure to comply with the Contract's reporting obligations, and the City's motion is granted as to this claim against Zemurray." [Dkt No. 171 at 32].

   Defendants' Rebuttal:   The Court's ruling was that the Defendant Zemurray breached the terms of the MOU by failing to provide the quarterly reports after the first one.  The Court made no finding as to whether that breach was material.

- Was ZSC's failure to provide the quarterly reports (after the first one) after the City of Atlantic City breached the Contract?

   Plaintiff's Objection:  Defendants have not set forth any facts which would provide support for a breach by the City prior to a breach by Zemurray.

   Defendants' Rebuttal:  Plaintiff's Objection is not correct.  Defendants Lax, and TN BIDCO raised the issue of the City demanding the monies be returned when

there was no contract provision for same in the Defendants' Summary Judgment motion.

- Did ZSC's failure to provide reports (after the first one) in a timely manner a cause of the City's damages?

- Did the City's own conduct cause and/or contribute to any alleged damages?

- Was the City of Atlantic City permitted to terminate the program under the Contract?

- Was the $3M used to fund the loan program required to be returned to the City <u>prior</u> to July 15, 2018?

  <u>Plaintiff's Objection:</u>  This issue is moot.  July 15, 2018 is one month away and Defendants have not returned the City's funds.

  <u>Defendants' Rebuttal:</u>  The issue is not presented only for the ripeness issue previously raised.  This is relevant to the damages claimed by the Plaintiff.

- Did ZSC take actions to oversee implementation of the Loan Fund?

- Did ZSC breach the terms of the MOU and Escrow Agreement in transferring out the $3M?

**Breach of Good Faith and Fair Dealing**

- Was there a contract between the parties?

  <u>Plaintiff's Objection:</u>  The Court already determined that there was a Contract between the parties when it granted summary judgment in favor of the City for Zemurrray's failure to comply with the Contract's reporting obligations.  [Dkt No. 171 at 32].

- Did the City of Atlantic City have benefits that it would receive under the Contract?

  <u>Plaintiff's Objection:</u>  Defendants use of the word "benefits" is vague and ambiguous.

- Did ZSC act in bad faith with the purpose of depriving the City of rights or benefits under the Contract?

- Did ZSC perform acts in furtherance of overseeing the implementation of the Loan Program?

**Common Law Fraud**

Defendants object to this area of law being presented as the Plaintiff did not state a claim consistent with Judge Kugler's December 29, 2017 opinion.

**Fraudulent Transfer**

- Did ZSC owe a debt to the City of Atlantic City prior to the monies in the escrow account being transferred?

**Piercing of the Corporate Veil**

- Was ZSC organized and operated as a mere instrumentality of another company?

- Did the Plaintiff prove that ZSC was using TN BIDCO to perpetrate fraud upon the Plaintiff?

- Did Plaintiff prove that ZSC abused corporate formalities to perpetrate fraud upon the Plaintiff?

**Constructive Trust/Equitable Lien**

Defendants object to this area of law being presented as it is not a question for the jury, but rather a legal remedy that the Court is permitted to impose <u>only</u> if the Court finds that a wrongful act has occurred which resulted in the transfer of property. Defendants further object to this remedy as it was not requested as an element of damages in the Second Amended Complaint.

**PART IX.    MISCELLANEOUS**

Set forth any additional stipulations of counsel and/or motions on other matters which require action of the court.

**Motions in Limine on behalf of Plaintiff:**

- Motion *in limine* for an adverse inference against W. Wesley Drummon

- Motion to exclude March 24, 2014 Status Report

- Motion to exclude evidence and/or testimony relating to the website www.acloanprogram.com.

- Motion to exclude introduction of evidence and/or testimony regarding purported loan applications from City residents.

- Plaintiff reserves the right to amend its motions *in limine* and add or delete motions *in limine*.

- Plaintiff reserves the right to make objections upon receipt of Defendants' Exhibit Lists.

**Motions in Limine on behalf of Defendants Zemurray Street Capital, LLC and Wesley Drummon**

- Motion *in limine* to bar testimony of witnesses not properly identified in Plaintiff's Rule 26 Disclosure.

- Motion to dismiss the Fraud Count pursuant to the Court's ruling of December 29, 2017.

  <u>Plaintiff's Objection:</u>  On June 7, 2018, during the Pretrial Conference, the Court held that dispositive motions are not motions in limine.

- Motion to dismiss the Fraudulent Transfer claim.

  <u>Plaintiff's Objection:</u>  On June 7, 2018, during the Pretrial Conference, the Court held that dispositive motions are not motions in limine.

- Motion to dismiss the Constructive Trust claim.

- <u>Plaintiff's Objection:</u>  On June 7, 2018, during the Pretrial Conference, the Court held that dispositive motions are not motions in limine.

- Motion to dismiss Defendant Drummon from all causes of action consistent with the Court's December 29, 2017 opinion.

- <u>Plaintiff's Objection:</u>  On June 7, 2018, during the Pretrial Conference, the Court held that dispositive motions are not motions in limine.

- Motion to dismiss Plaintiff's Breach of Contract claim for lack of standing and ripeness.

  <u>Plaintiff's Objection:</u>  On June 7, 2018, during the Pretrial Conference, the Court held that dispositive motions are not motions in limine.

- Defendants reserve the right to file additional Motions *in limine* should the need arise prior to trial.

**PART X.      JURY TRIALS**

No later than seven days prior to the scheduled trial date or at such time as the court may direct:

1. Each party shall submit to the district Judge and to opposing counsel a trial brief or memorandum with citations and authorities and arguments in support of the party's position on all issues of law. The trial brief shall be filed electronically.

2. Each party shall submit to the District Judge and to opposing counsel written requests for charges to the jury. Supplemental requests to charge that could not have been anticipated may be submitted any time prior to the arguments to the jury. All requests for charge shall be on a separate page or pages, plainly marked with the name and number of the case; shall contain citations of supporting authorities; shall designate the party submitting the same; and shall be numbered in sequence.

   Each party shall submit to the judge and to opposing counsel proposed Voir Dire questions.

**CONCLUDING CERTIFCATION**

We hereby certify by the affixing of our signatures to this Final Pretrial Order that it reflects the efforts of all counsel and that we have carefully and completely reviewed all parts of this Order prior to its submission to the Court. Further, it is acknowledged that amendments to this Joint Final Pretrial Order will not be permitted except where the Court determines that manifest injustice would result if the amendment is not allowed.

Attorney(s) for Plaintiff(s):                    Attorney(s) for Defendant(s):

/s/ _____                    /s/ _____

                                               /s/ _____

                                               /s/ _____

                                               /s/ _____

*Final version accepted by Parties as Set forth on record on 10/30/18*

Entry of the foregoing Joint Final Pretrial Order is hereby APPROVED this __31st__ day of __October__, 2018.

_____
The Honorable Judge Anne Marie Donio
UNITED STATE MAGISTRATE JUDGE
United States District Court
For the District of New Jersey

4849-8368-5235, v. 1

34

CITY OF ATLANTIC CITY V. ZEMURRAY STREET CAPITAL, LLC, ET AL.

**PLAINTIFF CITY OF ATLANTIC CITY'S EXHIBIT LIST**

| EXHIBIT | DESCRIPTION | DEFENDANT ZEMURRAY STREET CAPITAL'S OBJECTION | DEFENDANT W. WESLEY DRUMMON'S OBJECTION | ID | EV |
|---|---|---|---|---|---|
| P1. | Memorandum of Understanding, dated May 31, 2013, between the City of Atlantic City and Zemurray Street Capital. | | | | |
| P2. | Escrow Agreement, dated July 19, 2013, between the City and Zemurray. | | | | |
| P3. | City Council Resolution No. 450, dated May 22, 2013, authorizing execution of a Memorandum of Understanding between Zemurray and the City. | | | | |
| P4. | City Council Ordinance No. 35, dated July 11, 2013, that authorized the establishment of $3 million for the creation of the Loan Fund. | | | | |
| P5. | City Council Resolution No. 435, dated May 7, 2014, authorizing the cancellation of the MOU and return of the City's $3 million. | | | | |
| P6. | Series of e-mails, dated July 26, 2012 through August 1, 2012, between the City and Drummon regarding the implementation of the Lending Program. | | | | |
| P7. | Series of e-mails, dated August 28, 2012 through August 31, 2012, between the City and Drummon, including an e-mail by Drummon submitting an investment proposal for the Lending Program. | | | | |

CITY OF ATLANTIC CITY V. ZEMURRAY STREET CAPITAL, LLC, ET AL.

PLAINTIFF CITY OF ATLANTIC CITY'S EXHIBIT LIST

| EXHIBIT | DESCRIPTION | DEFENDANT ZEMURARY STREET CAPITAL'S OBJECTION | DEFENDANT W. WESLEY DRUMMON'S OBJECTION | ID | EV |
|---|---|---|---|---|---|
| P8. | E-mail, dated December 13, 2012, from Drummon to the City enclosing a revised investment proposal for the Lending Program. | | | | |
| P9. | Series of e-mails, dated January 28, 2013 through June 10, 2013, between the City and Drummon negotiating the terms of the Lending Program. | | | | |
| P10. | Series of e-mails, dated January 28, 2013, from Drummon to the City stating that TN BIDCO will administer the Lending Program. | | | | |
| P11. | E-mail, dated April 29, 2013, from the City to Drummon informing Drummon that the City's initial payment for the Lending Program would be $3 million, with $1.5 million to be used for residential loans and $1.5 million to be used for commercial loans. | | | | |
| P12. | E-mail, dated June 11, 2013, between the City and Drummon memorializing the terms of the Memorandum of Understanding. | | | | |
| P13. | Series of e-mails, dated June 25, 2012 and June 29, 2012, between Drummon and former Chief Executive Officer of TN BIDCO, Jim Thigpen and former counsel for TN BIDCO shareholders, Chuck Fisher, Esq., negotiating the terms of Zemurray's purchase of TN BIDCO. | | | | |

2

CITY OF ATLANTIC CITY V. ZEMURRAY STREET CAPITAL, LLC, ET AL.

PLAINTIFF CITY OF ATLANTIC CITY'S EXHIBIT LIST

| EXHIBIT | DESCRIPTION | DEFENDANT ZEMURARY STREET CAPITAL'S OBJECTION | DEFENDANT W. WESLEY DRUMMON'S OBJECTION | ID | EV |
|---|---|---|---|---|---|
| P14. | Zemurray's Change of Control Application to the Tennessee Department of Financial Institutions (the "TNDFI") for regulatory approval of Zemurray's proposed purchase of TN BIDCO. | | | | |
| P15. | Letter, dated February 28, 2013, from the TNDFI to Drummon seeking clarification on information presented in Zemurray's Application. | | | | |
| P16. | Letter, dated April 5, 2013, from Zemurray to the TNDFI responding to the TNDFI's February 28, 2013 letter. | | | | |
| P17. | Letter, dated April 18, 2013, from the TNDFI to Zemurray requiring additional information regarding Zemurray's Application. | | | | |
| P18. | Letter, dated April 24, 2013, from Zemurray to the TNDFI responding to the TNDFI's letter, dated April 18, 2013. | | | | |
| P19. | A series of e-mails, dated June 4, 2013 and July 22, 2013, from Drummon to the TNDFI providing the TNDFI with financial information and a list of Zemurray's members. | | | / | |
| P20. | E-mail, dated August 2, 2013, from Drummon to the TNDFI lowering the initial capitalization from $5 million to $3 million. | | | | |

3

CITY OF ATLANTIC CITY V. ZEMURRAY STREET CAPITAL, LLC, ET AL.

PLAINTIFF CITY OF ATLANTIC CITY'S EXHIBIT LIST

| EXHIBIT | DESCRIPTION | DEFENDANT ZEMURARY STREET CAPITAL'S OBJECTION | DEFENDANT W. WESLEY DRUMMON'S OBJECTION | ID) | EV |
|---------|-------------|----------------------------------------------|------------------------------------------|-----|-----|
| P21. | Letter, dated August 6, 2013, from the TNDFI to Drummon confirming Drummon's request to lower the initial capital injection upon change of control of TN BIDCO. | | | | |
| P22. | City's application, dated June 11, 2013, to the New Jersey State Department of Community Affairs, Division of Local Government Services for approval of the Lending Program and NJDCA's partial approval on June 18, 2013. | | | | |
| P23. | August 8, 2013 wire transfer information demonstrating that the City wired $3 million from its account at Sun National Bank to the escrow account at City National Bank. | | | | |
| P24. | August 23, 2013 wire transfer information demonstrating that Drummon wired the City's $3 million from the escrow account at City National Bank to TN BIDCO's account at First Bank. | | | | |
| P25. | E-mail from Mr. Thipgen to Mr. Fisher and Drummon dated August 12, 2013 regarding the closing instructions for the funds to acquire TN BIDCO. | | | | |
| P26. | Incoming wire detail from City National Bank demonstrating that on August 12, 2013, Gary A. Lax wired $5,200.00 into the Escrow Account. | | | ╱ | |
| P27. | Closing statement regarding Zemurray's purchase of TN BIDCO dated August 23, 2013. | | | | |

4

CITY OF ATLANTIC CITY V. ZEMURRAY STREET CAPITAL, LLC, ET AL.

PLAINTIFF CITY OF ATLANTIC CITY'S EXHIBIT LIST

| EXHIBIT | DESCRIPTION | DEFENDANT ZEMURARY STREET CAPITAL'S OBJECTION | DEFENDANT W. WESLEY DRUMMON'S OBJECTION | ID | EV |
|---|---|---|---|---|---|
| P28. | Bank statement from First Bank, dated August 30, 2013 and a bank statement from Farmers & Merchants Bank, dated August 2013. | | | | |
| P29. | Consent to Authorization, dated November 12, 2013, executed by Lax and Drummon as members of Zemurray. | | | | |
| P30. | Letter, dated May 29, 2014, from the TNDFI to Drummon approving Zemurray's application for the acquisition of control of TN BIDCO subject to various conditions. | | | | |
| P31. | E-mail, dated June 9, 2014, from Gary Lax to Thigpen regarding the control approval and new individuals being elected to the TN BIDCO Board of Directors. | | | | |
| P32. | E-mail, dated September 5, 2014, from Lax to the TN BIDCO Board of Directors presenting a resolution appointing him Chairman of the Board of Directors. | | | | |
| P33. | Transcript of Drummon's April 7, 2016 deposition. | | | | |
| P34. | Drummon and Zemurray's responses to the City's Requests for Admissions wherein the Fifth Amendment privilege was invoked. | | | | |
| P35. | Drummon and Zemurray's responses to the City's Interrogatories. | | | | |
| P36. | Transcript of Gary Lax's April 26, 2016 deposition. | | | | |

5

CITY OF ATLANTIC CITY V. ZEMURRAY STREET CAPITAL, LLC, ET AL.

PLAINTIFF CITY OF ATLANTIC CITY'S EXHIBIT LIST

| EXHIBIT | DESCRIPTION | DEFENDANT ZEMURARY STREET CAPITAL'S OBJECTION | DEFENDANT W. WESLEY DRUMMON'S OBJECTION | ID | EV |
|---|---|---|---|---|---|
| P37. | Gary Lax's responses to the City's interrogatories. | | | | |
| P38. | Series of e-mails dated March 19, 2014 through April 7, 2014, between Drummon and Michael J. Perugini regarding return of the City's $3 million | | | | |
| P39. | Letter, dated March 20, 2014 from Perugini to Drummon requesting information about the City's funds and proof that the funds were secured. | | | | |
| P40. | Letter, dated April 7, 2014, from Perugini to Drummon advising him that he has not taken any action to return the City's $3 million | | | | |
| P41. | Letter, dated May 21, 2014, from Perugini to Drummon advising Drummon that the City was taking legal action. | | | | |
| P42. | Status Report, dated March 24, 2014 | | | | |
| P43. | Transcript of Michael J. Perugini's Deposition | | | | |
| P44. | Transcript of Michael Lax's Deposition | | | | |
| P45. | Transcript of Jim Thigpen's Deposition | | | | |
| P46. | Transcript of Eddie Lax's Deposition | | | | |

6

4811-6102-1021, v. 1