**DUANE MORRIS LLP**
**A Delaware Limited Liability Company**
1940 Route 70 East, Suite 100
Cherry Hill, NJ  08003
Attorneys for Intervener,
Cumberland River Capital, LLC
Gilbert Brooks, Esquire, Bar ID #013291986

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY
### CAMDEN VICINAGE

| | |
|---|---|
| THE CITY OF ATLANTIC CITY, <br><br> Plaintiff, <br><br> v. <br><br> ZEMURRAY STREET CAPITAL, LLC, et al., <br><br> Defendants. | <br><br><br> Civil No. 14-5169 (NLH/AMD) <br><br><br> BRIEF IN SUPPORT OF NOTICE OF APPEAL |

## TABLE OF CONTENTS

PRELIMINARY STATEMENT..............................................................1

STATEMENT OF FACTS .................................................................7

LEGAL ARGUMENT .....................................................................14

I.   MAGISTRATE JUDGE DONIO'S FINDING THAT ATLANTIC
     CITY ARGUED THAT THE TN BIDCO TRANSACTION WAS
     FRAUDULENT AT THE APRIL 18, 2019 HEARING IS
     CLEARLY ERRONEOUS.......................................................15

II.  MAGISTRATE JUDGE DONIO'S FINDING THAT DISTRICT
     JUDGE KUGLER DID NOT ENTER A FINAL FINDING IS
     CLEARLY ERRONEOUS.......................................................18

III. ATLANTIC CITY SHOULD BE COLLATERALLY ESTOPPED
     FROM ASSERTING THAT THE TRANSFER OF TN BIDCO'S
     STOCK TO CUMBERLAND IS A FRAUDULENT TRANSFER .......21

IV.  ATLANTIC CITY SHOULD BE JUDICIALLY ESTOPPED
     FROM ASSERTING THAT THE TRANSER OF TN BIDCO'S
     STOCK TO CUMBERLAND IS A FRAUDULENT TRANSFER .......26

CONCLUSION ..............................................................................30

## TABLE OF AUTHORITIES

**Cases**

*In re Adelphia Recovery Trust*, 634 F.3d 678 (2d Cir. 2011) ................................. 20

*In re Brown*, 951 F.2d 564 (3d Cir. 1991)........................................................... 23-24

*Capmark Financial Group Inc. v. Goldman Sachs Credit Partners L.P.*, 491 B.R. 335 (S.D.N.Y. 2013) .................................................................. 20

*Dyndul v. Dyndul*, 620 F.2d 409 (3d Cir. 1980)....................................................... 23

*Exxon Corp. v. Halcon Shipping Co., Ltd.*, 156 F.R.D. 589 (D.N.J. 1994)........................................................................................................................... 15

*Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162 (D.N.J. 1998) ............... 15

*Haines v. Liggett Gap Inc.*, 975 F.2d 81 (3d Cir. 1992) ........................................ 15

*Hawksbill Sea Turtle v. F.E. M.A.*, 126 F.3d 461 (3d Cir. 1997) ...................... 23-24

*Long v. Leggett & Platt*, 2019 WL 626428 (D.N.J. Feb. 13, 2019)................. 14, 21

*Marks v. Struble*, 347 F. Supp. 2d 136 (D.N.J. 2004)............................................ 21

*McTernan v. City of York*, 577 F.3d 521 (3d Cir. 2009) ........................................ 23

*Sabsina Corporation v. HerbaKraft, Inc.*, 2020 WL 1503061 ............................... 16

*Santiago v. McDonald's Restaurants of New Jersey, Inc.*, 2009 WL 223407 (D.N.J. Jan. 27, 2009) ........................................................... 15, 18, 21

*United States v. Nobel Learning Communities*, 2017 WL 4697050 (D.N.J. Oct. 19, 2017) ...................................................................................... 21

**Statutes**

28 U.S.C. §636(b)(1)(A) ......................................................................................... 15

N.J.S.A. 25:2-30 ......................................................................................................... 2

New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20 et seq.............................................................................................................................. 2

DM1\11852876.1

**Other Authorities**

L. Civ. R. 72.1(c)(1)(A) ........................................................................... 15

Fed. R. App. P.4(a)(1)(A) ......................................................................... 24

Fed. R. Civ. P. 72(a) ............................................................................ 14-15

DMI\11852876.1

## PRELIMINARY STATEMENT

In ruling on a Motion for Reconsideration filed by Intervener Cumberland River Capital, LLC ("Cumberland") (ECF Doc. 339 and ECF Doc. 346), the Honorable Ann Marie Donio, United States Magistrate Judge for the District Court of New Jersey ("Magistrate Judge Donio"), found that Plaintiff City of Atlantic City ("Atlantic City") had argued during a preliminary injunction hearing conducted by the Honorable Robert B. Kugler, United States District Judge for the District of New Jersey ("District Judge Kugler") on April 18, 2019 (ECF Doc. 313) that a transaction entered into by Cumberland with Defendant Zemurray Street Capital, LLC ("Zemurray") whereby Cumberland acquired the stock of the Tennessee Business & Industrial Development Corporation ("TN BIDCO") was fraudulent and that reasonably equivalent value for the stock was not given to Zemurray by Cumberland. (ECF Doc. 349, p. 18 n. 9).

This finding by Magistrate Judge Donio was clearly erroneous.

On March 20, 2019, Atlantic City filed an Order to Show Cause with District Judge Kugler seeking, in relevant part, preliminary and permanent injunctive relief restraining Zemurray from transferring or selling any asset it owned, and seeking to have the District Court compel Zemurray to transfer the stock certificates of TN BIDCO to it. (ECF Doc. 289).

On April 5, 2019, Cumberland moved to intervene in connection with Atlantic City's Order to Show Cause. (ECF Doc. 301). The basis for the intervention was the fact that Cumberland had entered into a Stock Purchase Agreement (the "SPA") with Zemurray to acquire the stock of TN BIDCO. (ECF Doc. 301-3, Exh. A). Further, if Atlantic City's requests for injunctive relief were granted, the SPA would be impaired and Cumberland's effort to preserve TN BIDCO and return it to licensed lending operations would be negated at significant cost to Cumberland and its principals and affiliates. (ECF Doc. 301-2, pp. 7-9). In advancing its argument, Cumberland specifically addressed the issue of whether the TN BIDCO transaction could be considered a fraudulent transfer in violation of the New Jersey Uniform Fraudulent Transfer Act, N.J.S.A. 25:2-20 et seq., in particular N.J.S.A. 25:2-30. (ECF Doc. 301-2, p. 17). Cumberland argued that, "under New Jersey law, a later in time judgment does not allow the judgment creditor to impair a prior arms-length transaction between the judgment debtor and a bona fide purchaser." Id. Cumberland also argued that Zemurray was "receiving reasonably equivalent value for the stock of TN BIDCO." Id.

On April 16, 2019, Atlantic City filed a Letter Brief in response to the Cumberland intervention application. (ECF Doc. 307). In the Letter Brief, Atlantic City abandoned its request to enjoin and restrain Zemurray from transferring the stock of TN BIDCO and its request that the District Court compel

Zemurray to transfer to it the stock certificates of TN BIDCO. Id. Further, Atlantic City did not oppose the TN BIDCO transaction, leaving approval of the sale to the District Court's discretion. Id. at 2. Significantly, Atlantic City offered no argument to rebut Cumberland's position that the TN BIDCO transaction was not a fraudulent transfer. Atlantic City only raised the fraudulent transfer issue in connection with certain Secured Promissory Notes Zemurray had entered into that were to be satisfied as part of the purchase price being paid by Cumberland for the stock of TN BIDCO. Id. Atlantic City modified its injunctive relief application to a request that the Court order the SPA purchase price to be escrowed and that the Court allow Atlantic City to conduct "discovery as to all aspects of the various notes and security agreements entered into by Zemurray prior to the distribution of the sale proceeds." Id. at 5. Atlantic City specifically noted that "[s]uch relief will not prejudice Cumberland. . . ." Id. Again, nowhere in the Letter Brief did Atlantic City argue that the TN BIDCO transction was a fraudulent transaction. Id.

On April 18, 2019, District Judge Kugler conducted a hearing in connection with the Atlantic City Order to Show Cause and the Cumberland Motion to Intervene. (ECF Doc. 313). Contrary to Magistrate Judge Donio's finding, at no time during the hearing did Atlantic City argue that the TN BIDCO transaction was a fraudulent transfer. In fact, in direct response to District Judge Kugler's inquiry as to whether Atlantic City objected to the TN BIDCO transaction, Atlantic City

confirmed that it consented to the sale of the stock of TN BIDCO to Cumberland. (ECF Doc. 313, 3:19-4:5).  Atlantic City further confirmed that its only request was an order requiring the SPA purchase price to be escrowed pending a determination of how and to who the purchase price was to be paid.  Id.[1]

The colloquy from the April 18, 2019 hearing noted by Magistrate Judge Donio (ECF Doc. 313, p. 12:2-12) was **not** argument by Atlantic City that the sale of TN BIDCO's stock to Cumberland was a fraudulent transfer.  The colloquy pertained solely to the satisfaction of the Secured Promissory Notes as part of the payment of the SPA purchase price and the argument that Atlantic City needed additional time and discovery to determine if Zemurray received reasonably equivalent value in exchange for the Secured Promissory Notes.  (ECF 313, pp. 9:23-14:9).

Magistrate Judge Donio's finding that the record in this case "does not demonstrate" that District Judge Kugler entered any final finding "addressing the

---

[1] "The Court:  Okay.  Thank you.  The plaintiff filed some papers yesterday in which, if I read them correctly, you don't object to the intervention.  You don't object to the foreclosure going through.  You don't object to the sale going through.  You just want the money tied up.  Correct?

Mr. Roglieri:  Correct, your Honor.  We would consent to the sale of TN BIDCO to Cumberland Capital provided that the entire sale amount, $500,000, is escrowed pending a determination of where those monies should appropriately be paid to."

bona fide nature of the TN BIDCO transaction" that would bar Atlantic City from pursuing a claim for fraudulent transfer (ECF 349, p. 17) is also clearly erroneous.

As noted above, Atlantic City initially sought to enjoin Zemurray from transferring or selling any asset it owned and Atlantic City requested that the District Court compel Zemurray to transfer to it the stock certificates of TN BIDCO. (ECF 289). Cumberland opposed Atlantic City's injunctive relief request (ECF Doc. 301) and submitted two lengthy Certifications detailing every aspect of how the parties came to enter into the SPA, a copy of the SPA itself, and the basis for the purchase price paid for the TN BIDCO stock. (ECF Docs. 301-3 and 301-4). In response, Atlantic City withdrew its injunctive relief requests and confirmed to District Judge Kugler that it consented to the sale of TN BIDCO's stock to Cumberland. (ECF 313, pp. 3:19-4:5)[2] Atlantic City's only remaining request was that the funds from the sale of the TN BIDCO stock to Cumberland be placed in escrow pending the resolution of any claims by Atlantic City. The only claim Atlantic City advanced at the April 18, 2019 hearing that referenced a fraudulent

---

[2] As noted above, Atlantic City's only mention of fraudulent transfer was in connection with the Secured Promissory Notes. Again, despite Cumberland having briefed the issue (ECF 301-2, pp. 16-17), Atlantic City did not challenge the transfer of TN BIDCO's stock to Cumberland as a fraudulent transfer or otherwise contend that the TN BIDCO transaction was not a bona fide transaction.

transfer related to Zemurray's entry into the Secured Promissory Notes as a part of the payment of the SPA purchase price.

District Judge Kugler declined to order the funds from the sale of the TN BIDCO stock be placed in escrow, finding that Atlantic City had failed to establish an adequate legal argument for the request, but District Judge Kugler acknowledged that Atlantic City would have an opportunity, if it chose to do so, to conduct discovery as to whether the Secured Promissory Notes could be considered a fraudulent transfer. (ECF Doc. 313, pp. 8:15-14:9). Significantly, having been presented with Certifications detailing every aspect of the TN BIDCO transaction, including a copy of the SPA, and with Atlantic City consenting to the transaction, District Judge Kugler made no findings questioning whether the TN BIDCO transaction was a bona fide transaction and District Judge Kugler allowed the TN BIDCO transaction to move forward. Thus, Magistrate Judge Donio's conclusion that the record does not demonstrate that District Judge Kugler entered a final finding addressing the bona fide nature of the TN BIDCO transaction (ECF Doc. 349, p. 17) is clearly erroneous.

Having clearly erred regarding the fact that Atlantic City did not contest the TN BIDCO transaction as a fraudulent transfer at the April 18, 2019 hearing, and that District Judge Kugler made a final finding addressing the bona fide nature of the TN BIDCO transaction, Magistrate Judge Donio's February 23, 2021 Order is

DM1\11852876.1

also contrary to applicable law. The Order is contrary to applicable law because Magistrate Judge Donio should have ruled that Atlantic City is collaterally estopped and/or judicially estopped from asserting that the transfer of TN BIDCO's stock to Cumberland was a fraudulent transfer.

## STATEMENT OF FACTS

On March 7, 2019, approximately five years after commencing the subject litigation (ECF Doc. 1), Atlantic City obtained a Consent Judgment against Defendant Zemurray (ECF Doc. 285).[3] TN BIDCO had been a separate party Defendant in the subject litigation, but on December 29, 2017 TN BIDCO obtained Summary Judgment against Atlantic City dismissing all counts of the underlying Complaint. (ECF Doc. 172).[4]

On November 30, 2018, almost a full year after the District Court granted Summary Judgment in favor of TN BIDCO, Zemurray entered into the SPA agreeing to sell the stock of TN BIDCO to Cumberland. (ECF Doc. 301-3, Exh. A).

---

[3]The Consent Judgment was against Zemurray only was not entered against any other Defendant. The Consent Judgment was also deemed a final judgment in all respects.

[4] Atlantic City pursued claims against Zemurray and TN BIDCO for breach of contract, fraud, conversion, piercing the corporate veil by fraudulent conduct, including a specific claim for piercing the corporate veil with respect to TN BIDCO, fraudulent transfer and fraudulent concealment. (ECF Doc. 48).

7

TN BIDCO had been a licensed lender, but it had not been operational since 2014 and its licenses to lend had been suspended. (ECF Doc. 301-3). The SPA was the culmination of a lengthy and costly due diligence process. Id. Upon entering into the SPA, Cumberland also spent a great deal of time and money to attempt to obtain approval of the transaction from the Tennessee Department of Financial Institutions ("TDFI") and the reinstatement of TN BIDCO's lending licenses from TDFI and the U.S. Small Business Administration ("SBA"). Id.

As part of the submissions to the District Court opposing the Atlantic City request for injunctive relief, Cumberland explained that it had entered into a Fee Agreement with Zemurray related to the due diligence effort[5] and had advanced $105,000 to Zemurray to cover expenses incurred in connection with the due diligence effort.[6] As the Fee Agreement and Negotiable Senior Secured Promissory Notes were prior in time obligations, when Zemurray advised Cumberland it was entering into the Consent Judgment with Atlantic City, the Fee Agreement was converted to a Secured Promissory Note (ECF Doc. 301-4, Exh. C), and the Notes were secured by Security and Pledge Agreements with Zemurray

---

[5] The Fee Agreement required Zemurray to pay a $250,000 fee in connection with the due diligence effort. (ECF Doc. 301-4, Exh. A).

[6] The cash advances were documented by two Negotiable Senior Secured Promissory Notes. (ECF Doc. 301-3, Exhs. C and D).

8

and the filing of UCC-1 Financing Statements (ECF Docs. 301-3, Exh. E and 301-4, Exh. C) in order to preserve their priority (the "Secured Promissory Notes"). Because part of the SPA purchase price[7] would be used to release the liens created by the Secured Promissory Notes, Cumberland provided the District Court and Atlantic City with all documents related to the Secured Promissory Notes. Id.[8] The Secured Promissory Notes were discussed at length with District Judge Kugler at the April 18, 2019 hearing. (ECF Doc. 313, pp. 8:15-14:9).

After Atlantic City consented to the TN BIDCO transaction and District Judge Kugler allowed the transaction to move forward, on July 5, 2019, approximately 18 months ago, Cumberland and Zemurray closed on the SPA and the sale of TN BIDCO's stock to Cumberland. (ECF Doc. 346-2, Exh. A). At no time prior to the July 5, 2019 closing did Atlantic City withdraw its consent to the transaction or otherwise assert that the transaction was not a bona fide transaction or question whether the transaction was a potentially fraudulent transfer.

Subsequent to the April 18, 2019 hearing, a post-judgment discovery dispute arose between Zemurray and Atlantic City. Although Cumberland had intervened in the litigation, the dispute did not directly involve Cumberland and Cumberland

---

[7] The SPA purchase price was $500,000.

[8] As well as all documents related to the SPA.

was not included as a party in the proceedings related to the dispute (ECF Docs. 317, 319, 320, 322 and 324) and neither party served Cumberland with any papers submitted to the District Court in connection with the dispute, in particular a motion for a protective order filed by Zemurray (ECF Doc. 325-1) and a cross-motion filed by Atlantic City in connection therewith.  (ECF Doc. 330).

In its Brief in opposition to the Zemurray motion and in support of its cross-motion, Atlantic City asserted in a footnote that it "has never conceded the claim that the purported TN BIDCO transaction was bona fide."  (ECF 329-1, p. 7 n. 4).[9]

In her Order ruling upon the motions, Magistrate Judge Donio referenced this assertion by Atlantic City and noted that Atlantic City represented that it was never provided with any documents "showing that [the TN BIDCO transaction] was a bona fide transaction, and it served the discovery at issue in an attempt to obtain documents relating to the transaction."  (ECF Doc. 332, pp. 13-14).[10]  On

---

[9] The footnote was a response to Zemurray's claim that Atlantic City was "well aware that the TN BIDCO stock was sold in a bona fide transaction[.]"  (ECF 329-1, p. 7).

[10] This observation appears to be inaccurate.  Atlantic City did assert that it had not been provided with documents evidencing how the TN BIDCO purchase price was disbursed (ECF Doc. 329-1, p. 7, and note that Atlantic City did not seek any documents related to the disbursement of the SPA purchase price from Cumberland), but as to the TN BIDCO transaction itself, Atlantic City only asserted that it had "never conceded" that the "TN BIDCO transaction was bona fide."  In reality, Atlantic City had received a number of documents related to the TN BIDCO transaction (ECF Docs. 301-3 and 301-4), and Atlantic City had conceded that the TN BIDCO transaction was bona fide when it withdrew its

this basis, Magistrate Judge Donio found that the information sought by Atlantic
City "pertaining to TN BIDCO is relevant as it involves past financial transactions
which could potentially lead to the existence of fraudulently concealed or
fraudulently conveyed assets." (ECF Doc. 332, p. 14).[11]

As noted, Cumberland was not a participant in connection with the motions
that led to Magistrate Judge Donio's September 18, 2020 Order.  However, on
October 14, 2020, Cumberland received correspondence from the SBA referencing
Magistrate Judge Donio's Order and the fact that the Order permitted "discovery
regarding the sale of TN BIDCO's stock, including whether such transaction
involved fraudulently conveyed assets." (ECF 339-3, Exh. A).[12]  The SBA went
on to note that Magistrate Judge Donio's Order "seems to raise serious questions

---

request for injunctive relief that would have prevented the transaction from moving
forward and advised District Judge Kugler at the April 18, 2019 hearing that it
consented to the transaction.  (ECF Doc. 313, pp. 3:19-4:5).

[11] In so ruling, it was not clear if Magistrate Judge Donio meant the reference to
the potential "existence of fraudulently concealed or fraudulently conveyed assets"
to pertain specifically to the TN BIDCO transaction.

[12] Although Magistrate Judge Donio had not specified that she was permitting
discovery regarding the sale of TN BIDCO stock to Cumberland or that the sale of
the TN BIDCO stock to Cumberland potentially involved "fraudulently conveyed
assets[,]" that was the SPA's take away from the Order.

11

about Cumberland's claim to legal ownership of TN BIDCO's stock[.]"[13] Accordingly, the SBA advised that it was delaying consideration of Cumberland's application to take over TN BIDCO's lending authority, "at least until any legal issues regarding the sale of TN BIDCO's stock are resolved."  Id.  In the first instance, the SBA requested that Cumberland provide "all documentation and information related to the acquisition of TN BIDCO's stock by Cumberland[.]"  Id.

Cumberland promptly complied with the SBA's request for documentation and information related to the acquisition of TN BIDCO's stock, including an October 27, 2020 submission providing the details of the April 18, 2019 hearing before District Judge Kugler and the transcript of the hearing.  When it became clear this submission was not sufficient and that the SBA would require a clarification or further ruling from Magistrate Judge Donio to resolve the legal issues it perceived regarding the sale of TN BIDCO's stock to Cumberland, Cumberland filed the Motion for Reconsideration with Magistrate Judge Donio. (ECF Doc. 339).

In relevant part, the Motion for Reconsideration provided Magistrate Judge Donio with the details regarding the April 18, 2019 hearing conducted by District

---

[13] Magistrate Judge Donio's Order did not raise any direct questions regarding Cumberland's ownership of the TN BIDCO stock, but again, that was the SBA's take away from the Order.

DM1\11852876.1

Judge Kugler, including in particular Atlantic City's consent to the sale of TN BIDCO's stock to Cumberland. On this basis, and to address the SBA's concern, Cumberland requested that Judge Donio modify the September 18, 2020 Order to reflect that there are no fraudulent conveyance or fraudulent concealment issues related to Cumberland's acquisition of the TN BIDCO stock. (ECF Doc. 339-1).

In response to the Motion for Reconsideration and the SBA's concerns regarding Judge Donio's Order, Atlantic City filed a Letter Brief in Opposition to the Motion for Reconsideration. Despite having consented to the TN BIDCO transaction, and despite having offered no argument at the time of the April 18, 2019 hearing that the sale of TN BIDCO stock to Cumberland was a fraudulent transfer or arguing that it needed discovery to ascertain if the transaction was a fraudulent transfer, Atlantic City took the position that "Cumberland had full knowledge when it entered into the transaction with Zemurray that [Atlantic] City asserted that it was a fraudulent transfer[.]" (ECF Doc. 341, p. 4).

Citing the discussion at the April 18, 2019 hearing regarding Atlantic City's ability to seek discovery related to the Secured Promissory Notes in order to ascertain if Zemurray's entry into the Secured Promissory Notes was a fraudulent transfer, Atlantic City falsely conflated this discussion as an acknowledgement by Cumberland that following the April 18, 2019 hearing, Atlantic City would be pursuing a fraudulent transfer claim in connection with the sale of TN BIDCO's

13

stock to Cumberland.  Id.  Putting aside its consent to the transaction and the fact that District Judge Kugler allowed the TN BIDCO transaction to proceed, Atlantic City also contended that there was no basis for determining that anything District Judge Kugler said in connection with the April 18,2019 hearing bars Atlantic City from seeking discovery on the issue of whether the sale of the TN BIDCO stock to Cumberland was fraudulent.  Id. at 7.[14]

## **LEGAL ARGUMENT**

Federal Rule of Civil Procedure 72 provides litigants with a mechanism to object to a non-dispositive ruling made by a magistrate judge.  Long v. Leggett & Platt, 2019 WL 626428, at *2 (D.N.J. Feb. 13, 2019).  Once the magistrate judge issues an order, a party's timely appeal invokes the district court's consideration of the order to modify or set aside any part of it, but only if it is clearly erroneous or contrary to law.  28 U.S.C. §636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).

Under this standard, a finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the

---

[14] It should be noted that, despite having significant documentation and background information related to the TN BIDCO transaction and the Secured Promissory Notes (ECF Docs. 301-3 and 301-4) for nearly two years, Atlantic City failed to assert a single new fact that would support either a claim that the sale of TN BIDCO's stock to Cumberland was a fraudulent transfer or that Zemurray's entry into the Secured Promissory Notes was a fraudulent transfer.

DM1\11852876.1

definite and firm conviction that a mistake has been committed." <u>Santiago v.</u>
<u>McDonald's Restaurants of New Jersey, Inc.</u>, 2009 WL 223407, at *2 (D.N.J. Jan.
27, 2009) quoting <u>South Seas Catamaran, Inc. v. M/V Leeway</u>, 120 F.R.D. 17, 21
(D.N.J. 1988).

A ruling is contrary to law if the magistrate judge has misinterpreted or
misapplied applicable law.  <u>Gunter v. Ridgewood Energy Corp.</u>, 32 F. Supp. 2d
162, 164 (D.N.J. 1998).  A magistrate judge's findings appealed as contrary to law
are reviewed <i>de novo</i>.  <u>Haines v. Liggett Gap Inc.</u>, 975 F.2d 81, 91 (3d Cir. 1992).

The party filing the notice of appeal bears the burden of demonstrating that
the magistrate judge's decision was clearly erroneous or contrary to law.  <u>Exxon</u>
<u>Corp. v. Halcon Shipping Co., Ltd.</u>, 156 F.R.D. 589, 591 (D.N.J. 1994).  Despite
this matter involving the denial of a Motion for Reconsideration, the above
standard of review applies, not the standard of review utilized to evaluate a Motion
for Reconsideration.  <u>Sabsina Corporation v. HerbaKraft, Inc.</u>, 2020 WL 1503061
at *5 (D.N.J. March 30, 2020).

I.   **<u>MAGISTRATE JUDGE DONIO'S FINDING THAT ATLANTIC
CITY ARGUED THAT THE TN BIDCO TRANSACTION WAS
FRAUDULENT AT THE APRIL 18, 2019 HEARING IS CLEARLY
ERRONEOUS</u>**

In her February 23, 2021 Order, Magistrate Judge Donio found that Atlantic
City argued during the April 18, 2019 hearing that the sale of TN BIDCO's stock
to Cumberland was fraudulent and that reasonably equivalent value for the TN

DM1\11852876.1

BIDCO stock was not paid by Cumberland.  (ECF Doc. 349, p. 18 n. 9).

Magistrate Judge Donio further found that Atlantic City had requested, but not yet

received, documents to analyze whether reasonably equivalent value was given by

Cumberland for the TN BIDCO stock.  Id.  This finding is clearly erroneous.

During the April 18, 2019 hearing, Atlantic City never argued that the sale

of TN BIDCO's stock to Cumberland was fraudulent.  Instead, Atlantic City

confirmed to District Judge Kugler that it consented to the sale of TN BIDCO's

stock to Cumberland.  (ECF Doc. 313, pp. 3:19-4:5).  Further, Atlantic City never

questioned whether Cumberland was paying reasonably equivalent value for the

TN BIDCO stock.  Atlantic City was well aware of the price Cumberland was

paying for the TN BIDCO stock as Cumberland provided the District Court and

Atlantic City with the SPA and a Certification discussing how the parties arrived at

the purchase price.  (ECF Doc. 301-3).  Atlantic City specifically mentioned the

purchase price ($500,000) when it consented to the sale of TN BIDCO's stock to

Cumberland.  (ECF Doc. 313, pp. 3:24-4:3).  At no time did Atlantic City represent

to District Judge Kugler that the purchase price was not reasonably equivalent

value for the TN BIDCO stock.

Atlantic City only mentioned fraudulent transfer at the April 18, 2019

hearing in the context of Zemurray's entry into the Secured Promissory Notes.

District Judge Kugler rejected Atlantic City's argument that the timing of

Zemurray's entry into the Secured Promissory Notes demonstrated that the transaction was fraudulent.  (ECF Doc. 313, pp. 10:4-11:20).  The only time Atlantic City raised the issue of reasonably equivalent value was in the context of whether Zemurray received reasonably equivalent value for entry into the Secured Promissory Notes.  Id. at pp. 11:21-14:9.  Consistent with its Letter Brief responding to the Cumberland Motion to Intervene (ECF Doc. 307), this was also the only issue for which Atlantic City raised the need to conduct further discovery.

Contrary to Magistrate Judge Donio's findings, Atlantic City had received a significant number of documents to analyze whether reasonably equivalent value was given by Cumberland for the TN BIDCO stock.  (ECF Docs. 301-3 and 301-4).  Atlantic City did not advise District Judge Kugler that it required additional documents or discovery to determine if reasonably equivalent value was paid by Cumberland for the TN BIDCO stock.  Atlantic City only raised the need for additional documents or discovery with respect to the Secured Promissory Notes. (ECF Doc. 307, pp. 4-5 ("[Atlantic] City should be entitled to discovery as to all aspects of the various notes and security agreements entered into by Zemurray prior to a distribution of the sale proceeds."); (ECF Doc. 313, pp. 11:23-12:7).[15]

---

[15] As noted above, despite possessing all of the documents related to Zemurray's entry into the Secured Promissory Notes for nearly two years, Atlantic City has failed to assert a single additional fact that would in any way support a fraudulent transfer claim in connection with the Secured Promissory Notes.

DM1\11852876.1

Magistrate Judge Donio's findings regarding Atlantic City's arguments at the April 18, 2019 District Court hearing cannot be reconciled with the facts contained in the record. Thus, Magistrate Judge Donio's findings in this regard should be found to be clearly erroneous and the District Court should find that Atlantic City did not argue at the April 18, 2019 hearing that the sale of TN BIDCO's stock to Cumberland was fraudulent or that Cumberland did not pay reasonably equivalent value for the TN BIDCO stock. Further, the District Court should find that Atlantic City consented to the TN BIDCO transaction including the purchase price Cumberland paid for the TN BIDCO stock. <u>Santiago</u>, 2009 WL 223407, at *4.

## II.  MAGISTRATE JUDGE DONIO'S FINDING THAT DISTRICT JUDGE KUGLER DID NOT ENTER A FINAL FINDING IS CLEARLY ERRONEOUS

In her February 23, 2021 Order, Magistrate Judge Donio found that the record in this case does not demonstrate that District Judge Kugler entered any final finding addressing the bona fide nature of the TN BIDCO transaction that would bar Atlantic City from pursuing a fraudulent transfer claim. (ECF Doc. 349, p. 17). Magistrate Judge Donio's finding in this regard is clearly erroneous.

The April 18, 2019 hearing before District Judge Kugler began with Atlantic City's request that Judge Kugler issue an order restraining and enjoining Zemurray from transferring or selling TN BIDCO's stock and compelling Zemurray to

DM1\11852876.1

transfer TN BIDCO's stock to Atlantic City.  (ECF Doc. 289).  In response to

Cumberland's Motion to Intervene, Atlantic City withdrew its injunctive relief

requests and consented to the sale of TN BIDCO's stock to Cumberland.  District

Judge Kugler specifically ascertained at the April 18, 2019 hearing that Atlantic

City was not objecting to the sale of TN BIDCO's stock to Cumberland.  (ECF

Doc. 313, pp. 3:19-4:3).  District Judge Kugler then permitted the TN BIDCO

transaction to move forward.  Atlantic City never asserted that the TN BIDCO

transaction was not a bona fide transaction and District Judge Kugler made no such

finding at the April 18, 2019 hearing.

Following the April 18, 2019 hearing, there were no further judicial hearings

scheduled or contemplated as to whether the TN BIDCO transaction could move

forward.  Atlantic City consented to the transaction, District Judge Kugler allowed

the transaction to proceed and Cumberland proceeded to close the transaction

relying on Atlantic City's consent and Judge Kugler's authorization.  Thus, the

record does demonstrate that District Judge Kugler entered a final finding[16] that

addressed the bona fide nature of the TN BIDCO transaction.[17]  Magistrate Judge

---

[16] In particular, District Judge Kugler's April 18, 2019 Order granting
Cumberland's Motion to Intervene and denying Atlantic City's Order to Show
Cause with Temporary Restraints and Seeking Preliminary Injunctive Relief.
(ECF Doc. 308).

[17] Given that Atlantic City consented to the TN BIDCO transaction and did not
challenge the transaction as not being a bona fide transaction, as will be discussed

DM1\11852876.1

Donio's contrary finding cannot be reconciled with the facts contained in the

record.[18]  Magistrate Judge Donio's contrary finding is clearly erroneous and the

District Court should find that District Judge Kugler entered a final finding

addressing the bona fide nature of the TN BIDCO transaction that bars Atlantic

City from pursuing a fraudulent transfer claim in connection with the sale of TN

BIDCO's stock to Cumberland.  <u>Santiago</u>, 2009 WL 223407, at *4.

---

in more detail <i>infra</i>,.  Atlantic City should be barred from pursuing a fraudulent
transfer claim in connection with the sale of TN BIDCO's stock to Cumberland.
<u>Capmark Financial Group Inc. v. Goldman Sachs Credit Partners L.P.</u>, 491 B.R.
335, 352-54 (S.D.N.Y. 2013); <u>In re Adelphia Recovery Trust</u>, 634 F.3d 678, 697-
98 (2d Cir. 2011).

[18] Magistrate Judge Donio's cite to District Judge Kugler's reference during the
April 18, 2019 hearing to a fraudulent transfer (ECF Doc. 349, p. 17, n. 8) confuses
Judge Kugler's discussion with Atlantic City regarding the possible pursuit of a
fraudulent transfer claim in connection with the Secured Promissory Notes with the
pursuit of a possible fraudulent transfer claim in connection with the TN BIDCO
transaction itself.  As to the later, Atlantic City never raised such an issue, and
indeed consented to the TN BIDCO transaction, and Judge Kugler did not leave
open Atlantic City's right to pursue such a claim, but instead, permitted
Cumberland to proceed forward with the acquisition of the stock of TN BIDCO
without the overhang of such an issue.  Had District Judge Kugler raised any issue
regarding the bona fide nature of the TN BIDCO transaction, Cumberland would
not have moved forward with the closing of the transaction until any such issue
had been resolved.  As is evident from the position taken by the SBA in connection
with Magistrate Judge Donio's September 18, 2020 Order, closing in the face of
issues being raised regarding the bona fide nature of the TN BIDCO transaction
would not have benefitted Cumberland and would likely have greatly prejudiced
Cumberland.

III.   **ATLANTIC CITY SHOULD BE COLLATERALLY ESTOPPED FROM ASSERTING THAT THE TRANSFER OF TN BIDCO'S STOCK TO CUMBERLAND IS A FRAUDULENT TRANSFER**

Once Magistrate Judge Donio's clearly erroneous findings have been reconciled, it is clear that Judge Donio misapplied applicable law by not collaterally estopping Atlantic City from pursing a fraudulent transfer claim in connection with the sale of TN BIDCO's stock to Cumberland.  Long 2019 WL 626428, at *4-6; Marks v. Struble, 347 F. Supp. 2d 136, 149 (D.N.J. 2004).

For the doctrine of collateral estoppel to apply to an issue, four elements must be satisfied: (a) the issue must be the same as that involved in the prior action; (b) the issue must be actually litigated; (c) the issue must be determined by a final and valid judgment; and (d) the determination must be essential to the prior judgment.  United States v. Nobel Learning Communities, 2017 WL 4697050, at *6 (D.N.J. Oct. 19, 2017).

In terms of the first element, the issue of whether the TN BIDCO transaction was a bona fide transaction was involved in the April 18, 2019 hearing.  The hearing began with Atlantic City requesting an order restraining and enjoining Zemurray from transferring or selling the stock of TN BIDCO and compelling Zemurray to transfer the stock of TN BIDCO to Atlantic City.  (ECF Doc. 289).  Cumberland moved to intervene and, in arguing against Atlantic City's injunctive relief requests, Cumberland presented both the District Court and Atlantic City

DM1\11852876.1

with information and documents related to the TN BIDCO transaction. (ECF

Docs. 301-3 and 301-4). Cumberland also argued that the TN BIDCO transaction

was not a fraudulent transfer. (ECF Doc. 301-2, pp. 16-18). Thus, the issue of

whether the sale of TN BIDCO's stock to Cumberland transaction was a fraudulent

transfer was raised in connection with the April 18, 2019 hearing.

With the issue of whether the sale of TN BIDCO's stock to Cumberland was

a fraudulent transfer joined, Atlantic City had an opportunity to challenge the

transaction as a fraudulent transfer. Atlantic City did not challenge the transaction

as a fraudulent transfer or otherwise argue that the transaction was not bona fide.[19]

Instead, in response to direct questioning from District Judge Kugler, Atlantic City

consented to the sale of TN BIDCO's stock to Cumberland. (ECF Doc. 313, pp.

3:19-4:3). Thus, the second element of the collateral estoppel analysis is satisfied

as the issue of whether the sale of TN BIDCO's stock to Cumberland was a

fraudulent transfer was actually litigated.

As to the third element, a "final judgment" includes any prior adjudication of

an issue in another action that is determined to be sufficiently firm to be accorded

conclusive effect. In re Brown, 951 F.2d 564, 569 (3d Cir. 1991) (quoting 1

Restatement (Second) of Judgments §13 (1982)). In order to determine whether

---

[19] Again, Atlantic City only raised the fraudulent transfer issue in connection with
the Secured Promissory Notes.

the resolution in the prior hearing was "sufficiently firm," the court should

consider whether the parties were "fully heard, whether a reasoned opinion was

filed, and whether that decision could have been, or actually was, appealed." Id.

Finality for purposes of applying the collateral estoppel doctrine is a "pliant

concept" which "may mean little more than that the litigation of a particular issue

has reached such a stage that a court sees no really good reason for permitting it to

be litigated again." Id. In some circumstances, that could include findings and

conclusions in a preliminary injunction proceeding if the findings are accurate and

reliable and there is no compelling reason for permitting them to be litigated again.

McTernan v. City of York, 577 F.3d 521, 530-31 (3d Cir. 2009); Hawksbill Sea

Turtle v. F.E. M.A., 126 F.3d 461, 474 n.11 (3d Cir. 1997); Dyndul v. Dyndul, 620

F.2d 409, 411-12 (3d Cir. 1980).

In this case, the issue of whether the sale of TN BIDCO's stock to

Cumberland was a fraudulent transfer was adjudicated. As noted above, the issue

was joined by Cumberland in response to Atlantic City's injunctive relief requests.

Atlantic City had an opportunity to reply to Cumberland's argument regarding the

fraudulent transfer issue. Thus, both parties had an opportunity to be fully heard

on the issue when they appeared before District Judge Kugler at the April 18, 2019

hearing. In response to the issue being raised, Atlantic City consented to the sale

of TN BIDCO's stock to Cumberland and District Judge Kugler entered an Order

denying Atlantic City's request for injunctive relief which would have prevented the transaction from moving forward, thus allowing the TN BIDCO transaction to proceed. (ECF Doc. 308).

Importantly, as the ruling involved a post-judgment issue and no further proceedings were scheduled or contemplated regarding the issue of whether the sale of TN BIDCO's stock to Cumberland was a fraudulent transfer or otherwise not a bona fide transaction, District Judge Kugler's decision and Order could have been appealed by Atlantic City. Indeed, Atlantic City's only opportunity to appeal District Judge Kugler's decision and Order was to file an appeal within 30 days from the date Judge Kugler entered his Order (April 18, 2019). Fed. R. App. P.4(a)(1)(A). Given all of these circumstances, the litigation of the issue whether the sale of TN BIDCO's stock to Cumberland was a fraudulent transfer reached a stage, particularly when Atlantic City consented to the transaction and District Judge Kugler permitted the transaction to move forward, where there is no compelling reason for permitting the issue to be litigated again. Hawksbill, 126 F.3d at 474 n. 11; In re Brown, 951 F.2d at 569.

In terms of the fourth and final element of the collateral estoppel analysis, the determination of whether the TN BIDCO transaction was a bona fide transaction and not a fraudulent transfer was essential to District Judge Kugler's decision to allow the transaction to wave forward. The issue of whether the

transaction should be enjoined and possibly negated had been raised by Atlantic City and opposed by Cumberland. In opposing Atlantic City's request for injunctive relief, Cumberland argued that the transaction was a good faith, arms-length, bona fide transaction that should be permitted to move forward. Atlantic City then consented to the transaction and District Judge Kugler confirmed Atlantic City's consent to the transaction at the April 18, 2019 hearing. Thus, resolving the issue of whether the TN BIDCO transaction was a bona fide transaction and not a fraudulent transfer was essential to District Judge Kugler's ruling allowing the transaction to move forward.[20]

Given satisfaction of all the elements for the application of the doctrine of collateral estoppel, the District Court should rule that Atlantic City is collaterally estopped from pursuing a fraudulent transfer claim in connection with the sale of TN BIDCO's stock to Cumberland. As noted above, it has been two years since the April 18, 2019 hearing and Atlantic City has not asserted a single new fact justifying the pursuit of a fraudulent transfer claim in connection with the TN BIDCO transaction. At some point, enough is enough, particularly in light of the prejudice suffered by Cumberland in connection with the SBA, prejudice which

---

[20] As noted above, and as demonstrated in connection with the current situation with the SBA, resolution of the fraudulent transfer issue was certainly essential to Cumberland's decision to move forward and close the TN BIDCO transaction.

DM1\11852876.1

threatens to derail the transaction to the benefit of no party and the detriment of all parties.

**IV.    ATLANTIC CITY SHOULD BE JUDICIALLY ESTOPPED FROM ASSERTING THAT THE TRANSER OF TN BIDCO'S STOCK TO CUMBERLAND IS A FRAUDULENT TRANSFER**

After initially pursuing injunctive relief that would have enjoined, restrained and potentially terminated Cumberland's acquisition of TN BIDCO's stock, Atlantic City confirmed to District Judge Kugler at the April 18, 2019 hearing that it consented to the sale of TN BIDCO's stock to Cumberland.  The consent came after Atlantic City was presented with information and documents regarding the transaction, and in the face of Cumberland's assertion that the TN BIDCO transaction was not a fraudulent transfer, a point Atlantic City did not contest. Relying upon Atlantic City's consent and District Judge Kugler's ruling allowing the transaction to move forward, Cumberland closed the TN BIDCO transaction.

Eight months after advising District Judge Kugler that it consented to the TN BIDCO transaction, Atlantic City asserted that it never conceded that the TN BIDCO transaction was bona fide.  (ECF Doc. 329-1, p. 7 n. 4).  Nearly two years after advising District Judge Kugler that it consented to the sale of TN BIDCO's stock to Cumberland, Atlantic City now claims that it asserted that the transaction was a fraudulent transfer.  (ECF Doc. 341, p. 4).  Atlantic City's current position is clearly inconsistent with the earlier position it took before District Judge Kugler.

DM1\11852876.1

Therefore, the doctrine of judicial estoppel applies to the current position taken by
Atlantic City with respect to the transaction. <u>Saudi Basis Indus. Corp. v.
ExxonMobil Corp.</u>. 401 F. Supp. 2d 383, 390 (D.N.J. 2005).

Under both Federal and New Jersey law, judicial estoppel is an equitable,
discretionary doctrine, which preserves the integrity of the judicial system by
preventing parties from playing fast and loose with the courts in assuming
inconsistent positions in the same or a previous proceeding. <u>Motley v. New Jersey
State Police</u>, 196 F.3d 160, 163 (3d Cir. 1999); <u>In re Chambers Development Co.,
Inc.</u>, 148 F.3d 214, 229 (3d Cir. 1998); <u>McNemar v. Disney Store, Inc.</u>, 91 F.3d
610, 617 (3d Cir. 1996). This is especially true where there is prejudice to a party
that has acquiesced in the position formally taken by the party. <u>New Hampshire v.
Maine</u>, 532 U.S. 742, 749 (2001).

In determining whether to apply judicial estoppel, courts apply a two-part
test. <u>Krause v. American Sterilinger Co.</u>, 126 F.3d 494, 503 n.5 (3d Cir. 1987).
The court must examine: (a) whether the present position asserted by the litigant is
inconsistent with a position formerly asserted and, if so, (b) whether either or both
of the inconsistent positions were asserted in bad faith, *i.e.*, with the intent to play
fast and loose with the court. <u>Ryan Operations G.P. v. Santiam-Midwest Lumber
Co.</u>, 81 F.3d 355, 361 (3d Cir. 1996). Whether the party benefitted from its earlier
position or was motivated to seek such a benefit may be relevant insofar as it

27

evidences an intent to play fast and loose with the courts.  It is not, however, an

independent requirement for application of the doctrine of judicial estoppel.  Id.

Unquestionably in this case Atlantic City adopted two fundamentally

inconsistent positions.  At the April 18, 2019 hearing, after being presented with

the SPA and lengthy Certifications describing all aspects of the TN BIDCO

transaction, including how Cumberland arrived at the purchase price for the stock

of TN BIDCO, Atlantic City abandoned its request for injunctive relief.  Further,

Atlantic City advised the District Judge Kugler that it consented to the sale of TN

BIDCO's stock to Cumberland and Atlantic City never challenged the purchase

price Cumberland agreed to pay for the stock of TN BIDCO.

New Jersey courts have concluded that a position has been "successfully

asserted" if it has helped form the basis of a judicial determination.  The judicial

determination does not have to be in favor of the party making the assertion.  If a

court has based a final decision, even in part, on a party's assertion, that same party

is thereafter precluded from asserting a contradictory position.  Cummings v. Bahr,

295 N.J. Super. 374, 387-88 (App. Div. 1996).  It is clear in this case that Atlantic

City's consent to the sale of TN BIDCO's stock to Cumberland was relied upon by

District Judge Kugler and it helped form the basis for Judge Kugler's

determination to allow the TN BIDCO transaction to move forward.

Now, Atlantic City has taken the polar opposite position, falsely asserting that it never conceded that the sale of TN BIDCO's stock to Cumberland was a bona fide transaction and falsely claiming that it asserted that the transaction was a fraudulent transfer at the April 18, 2019 hearing conducted by District Judge Kugler. Atlantic City's current position simply cannot be reconciled with the position Atlantic City took at the April 18, 2019 hearing when it consented to the sale of TN BIDCO's stock to Cumberland.

Atlantic City's present position has also been asserted in bad faith. Atlantic City's consent to the sale of TN BIDCO's stock to Cumberland at the April 18, 2019 hearing, and lack of challenge to either the transaction or the purchase price Cumberland agreed to pay for the TN BIDCO stock on fraudulent transfer grounds (or any other basis) was not in any way ambiguous or susceptible to differing interpretation. As Atlantic City made clear to District Judge Kugler, the only transaction it was challenging was Zemurray's entry into the Secured Promissory Notes. Atlantic knew that, with the District Court's permission, Cumberland was moving forward with the acquisition of the stock of TN BIDCO. It is simply fundamentally unfair for Atlantic City, having given its consent and having not opposed the transaction or the purchase price paid for the TN BIDCO stock, to subsequently argue in a different proceeding in the same litigation that it did not concede that the TN BIDCO transaction was a bona fide transaction and that it

29

asserted at the April 18, 2019 hearing that the sale of TN BIDCO's stock to Cumberland was a fraudulent transfer.

Judicial estoppel is intended to preserve the integrity of the judicial system by preventing parties from playing fast and loose with the courts, and Atlantic City should not be permitted to assert inconsistent positions in an effort to exploit Magistrate Judge Donio's September 2020 Order and the SBA's concerns related thereto in order to create leverage to attempt to force Cumberland to compensate it to escape the conundrum created by the inconsistent positions Atlantic City has taken. Palcsesz v, Midland Mut.Life Ins. Co., 87 F. Supp. 409, 413-415 (D.N.J. 2000). In the circumstances of this case, application of the doctrine of judicial estoppel is warranted.

Magistrate Judge Donio's refusal to apply the doctrine of judicial estoppel to Atlantic City's current position regarding the TD BIDCO transaction was contrary to applicable law and the District Court should reverse that aspect of Judge Donio's February 23, 2021 Order. Long, 2019 WL 626428 at *4-6.

## CONCLUSION

For all the reasons set forth above, the District Court should hold that Magistrate Judge Donio's finding that Atlantic City argued during the April 18, 2019 hearing that the sale of TN BIDCO's stock to Cumberland was fraudulent and that reasonably equivalent value for the TN BIDCO stock was not given by

Cumberland was clearly erroneous.  The District Court should also hold that Magistrate Judge Donio's finding that the record does not demonstrate that District Judge Kugler entered any final finding addressing the bona fide nature of the TN BIDCO transaction was clearly erroneous.  The District Court should then reconcile the actual facts regarding Atlantic City's arguments in connection with the April 18, 2019 hearing, in particular its express consent to the sale of TN BIDCO's stock to Cumberland, and District Judge Kugler's findings regarding the TN BIDCO transaction, in particular his decision to allow the TN BIDCO transaction to move forward.

Having reconciled the actual facts, the District Court should find that Magistrate Judge Donio acted contrary to applicable law by declining to collaterally estop and/or judicially estop Atlantic City from taking its current position with respect to the TN BIDCO transaction, in particular that it never conceded that the TN BIDCO transaction was a bona fide transaction and that it asserted before District Judge Kugler that the sale of TN BIDCO's stock to Cumberland was a fraudulent transfer.  Applying either or both of the doctrines, the District Court should also rule that Atlantic City is collaterally estopped and/or judicially estopped from challenging the transfer of TN BIDCO's stock to Cumberland as a fraudulent transfer.

Dated:  March 9, 2021

> DUANE MORRIS LLP
> Attorneys for Intervener Cumberland River
> Capital, LLC
>
>
>
>
> By: /s/ Gilbert Brooks
>      Gilbert Brooks, Esquire

32