```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| THE CITY OF ATLANTIC CITY | No. 1:14-cv-05169-NLH-AMD |
| Plaintiff, | |
| v. | |
| ZEMURRAY STREET CAPITAL, LLC, et al., | OPINION |
| Defendants. | |

**APPEARANCES**:

GILBERT L. BROOKS
DUANE MORRIS LLP
1940 ROUTE 70 EAST - SUITE 200
CHERRY HILL, NJ 08003

   *On behalf of Cumberland River Capital, LLC*

CHERYL L. COOPER
LAW OFFICES OF CHERYL L. COOPER
342 EGG HARBOR RD. - SUITE A-1
SEWELL, NJ 08080

   *On behalf of Lantana Family Trust 1, Tennessee Business & Industrial Development Corporation, Gary A. Lax, Michael J. Lax, and Zemurray Street Capital, LLC*

FELIX P. GONZALEZ
3403 IRON ROCK COURT
PENNSAUKEN, NJ 08109

   *On behalf of W. Wesley Drummon and Zemurray Street Capital, LLC*

GREGORY ALAN LOMAX
LAULETTA BIRNBAUM LLC
591 MANTUA BOULEVARD - SUITE 200
SEWELL, NJ 08080

   *On behalf of Zemurray Street Capital, LLC and Gary A. Lax*

JESSICA ALI MAIER
MCMANIMON, SCOTLAND & BAUMANN, LLC
75 LIVINGSTON AVENUE, SUITE 201
ROSELAND, NJ 07068

    *On behalf of the City of Atlantic City*

JARED JAMES MONACO
ROTHSTEIN, MANDELL, STROHM, HALM & CIPRIANI
150 AIRPORT ROAD, STE 600
P.O. BOX 3017
LAKEWOOD, NJ 08701

    *On behalf of the City of Atlantic City*

THOMAS E. MONAHAN
DASTI, MURPHY, MCGUCKIN, ULAKY, KOUTSOURIS & CONNORS
620 WEST LACEY ROAD
PO BOX 1057
FORKED RIVER, NJ 08731

    *On behalf of the City of Atlantic City*

ROBERT S. ROGLIERI
TRENK ISABEL, P.C.
290 W. MT. PLEASANT AVE.
SUITE 2350
LIVINGSTON, NJ 07039

    *On behalf of the City of Atlantic City*

RICHARD D. TRENK
TRENK ISABEL, P.C.
290 W MT. PLEASANT AVE.
SUITE 2350
LIVINGSTON, NJ 07039

    *On behalf of the City of Atlantic City*

**HILLMAN, District Judge**

    Presently before the Court is the Certification of Cheryl L. Cooper, Esquire in Support of Defendants Gary and Michael Lax Application for Sanctions (the "Certification"). (ECF 129).  The

Certification documents costs and fees that Plaintiffs ask the Court to approve pursuant to this Court's order granting Both Michael and Gary Lax's motions for sanctions under Federal Rule of Civil Procedure 11 against Plaintiff, the City of Atlantic City. (ECF 119). For the reasons expressed below, the Court will grant only part of the amount requested in the Certification.

## BACKGROUND

The Court presumes the parties' familiarity with the case and only recounts the facts pertinent to the issue directly before it. On July 9, 2016, Michael and Gary Lax filed motions under Federal Rule of Civil Procedure 11(c) asking the Court to sanction Atlantic City and its attorneys, Thomas Monahan, Christopher Khatami, and the Law firm of Gilmore & Monahan, P.A. for pursuit of baseless and frivolous claims (the "Rule 11 Sanctions Motions"). (ECF 96, 97). After reviewing the submissions of the parties, the Court granted the motions in their entireties, directing Plaintiffs provide documentation of the expenses incurred in connection with the Rule 11 Sanctions Motions within 30 days. (ECF 119). On February 21, 2017, Plaintiffs submitted the Certification as support for the direct expenses incurred by the Laxes as well as attorneys fees and costs. (ECF 129).

As part of the Certification, Plaintiffs have submitted

3

affidavits of Michael and Gary Lax, outlining the costs they incurred in connection with prosecuting the Rule 11 Sanctions Motions. (See ECF 129 at 9-17).  In Michael Lax's affidavit, he states that he paid $22 for parking to attend a deposition in Washington D.C. and that he drove 70 miles to and from the Nashville airport to his home, and requests $37.80 for the mileage. (Id. at 10). He requests reimbursement totaling $59.80. (Id.)  Notably, he states that he paid cash for the $22 of parking and therefore does not have a receipt. (Id.)  He bases the request for mileage reimbursement on a statement by Ms. Cooper that the "IRS reimbursement rate for auto mileage in April 2016 was .54 per mile."  (Id.)  Finally, he states that Ms. Cooper's hourly rate is $500 per hour and that he found her bill "fair and accurate" (Id. at 11).

Gary Lax's affidavit is much the same. (Id. at 13-17).  He states that he paid for his brother, Michael's airfare to attend the depositions, which came to a total of $675.96.[1] (Id. at 14-15).  He also states that he paid for the hotel rooms for Ms. Cooper and Michael and for Ms. Cooper's parking when she parked her car at the hotel.  (Id. at 14).  The affidavit also says that he paid $23.75 for breakfast with Ms. Cooper and Michael

---

[1] Though Gary Lax's affidavit states that he attached the bill for his brother's roundtrip flight between Nashville and Washington D.C. (Id. at 14-15), no bill is attached anywhere in the Certification.

4

the day of the depositions. (Id.)  According to Gary Lax's affidavit and a bill he attached, the total bill for the hotel rooms, parking, and taxes came to $636.53.  (Id. at 17-19).  He also requests $40 in taxi fees for the trip from the hotel to the location of the deposition, based on his "recollection" that the trips cost more than $20 each way and his approximation of what he must have paid based on the cost of an UBER ride "of the same approximate distance". (Id. at 15).  In sum, Gary Lax requests reimbursement of $1,352.49.  (Id. at 15).

To support the request for $79,541.72 in attorneys fees and costs, the Certification attaches a spreadsheet detailing Ms. Cooper's billing related to the Rule 11 Sanctions Motions (Id. at 22-31).  Ms. Cooper's bill contains various entries related to the Rule 11 Sanctions Motions, including legal research, document review, drafting, and travel, among other tasks.  (See generally id. at 22-31).  As stated in the affidavits, Ms. Cooper's bill indicates that her hourly rate for services is $500 per hour.  (Id.)  However, the Certification does not provide any documentation or explanation to support the reasonableness of Ms. Cooper's hourly rate.

Indeed, in a letter filed by Thomas Monahan, counsel for Atlantic City, challenging the amount requested in the certification, Mr. Monahan indicates that the Certification does not explain the $500 hourly rate at all (ECF 130 at 3

5

("[P]laintiff objects to defense counsel's $500/hour fee as nothing was set forth in counsel's certification why said rate should be accepted by the Court, other than that counsel's clients claims within their certifications that they thought it was fair.")) Mr. Monahan argues that this Court should consider any fee award it imposes on the "specific circumstances of this matter." (Id.)

## DISCUSSION

As it has previously granted the Rule 11 Sanctions Motions in their entirety, the only task remaining before the Court is to determine a reasonable figure to award to the prevailing parties. Under Rule 11(c)(2), a Court may award a party who prevails on a motion for Rule 11 sanctions "reasonable expenses, including attorney's fees, incurred for the motion." Fed. R. Civ. P. 11(c)(2). When awarding sanctions for a violation of Rule 11 sanctions the Court may "include all or part of the movant's fees and expenses directly resulting from the Rule 11 violation, to the extent warranted for effective deterrence." Est. of Hennis v. Balicki, 2018 WL 2230543, at *2 (D.N.J. May 16, 2018). The Court already granted movants' request for out-of-pocket expenses and attorneys fees and costs (ECF 119; see also ECF 96; ECF 97), so all that is left now is to set a reasonable amount.

In the context of fee awards provided for by different

6

federal statutes, district courts generally determine reasonable fees by looking to the lodestar formula: taking the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."[2] Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). While this approach is not directly relevant to the sanctions context, and courts often impose sanctions without engaging in such calculations, courts in this Circuit have also referred to this standard in calculating the proper sanctions to impose in certain cases. See Keister v. PPL Corporation, 257 F. Supp. 3d 693 (M.D. Pa. 2016). It is well accepted in this district that "[t]he party seeking attorney's fees bears the burden to prove the reasonableness of the fee request." Stadler v. Abrams, 2018 WL 3617967, at *2 (D.N.J. July 30, 2018), aff'd, 785 F. App'x 66 (3d Cir. 2019) (evaluating what amount of attorneys fees to grant under an analogous legal provision allowing their award). The Court's assessment of reasonableness must be grounded in facts before it and it "may not make any findings of reasonableness based on a generalized sense of appropriateness" but must instead rely on the record.

---

[2] While the calculation of the lodestar formula often involves calculation of a multiplier when awarding fees in the class action settlement context, In re Schering-Plough/Merck Merger Litig., 2010 WL 1257722, at *18 (D.N.J. Mar. 26, 2010) (discussing the use of a multiplier in the context of awarding attorneys fees from a class settlement), the Court finds that that is not necessary here.

Id.  "This burden is normally addressed by submitting affidavits of other attorneys in the relevant legal community attesting to the range of prevailing rates charged by attorneys with similar skill and experience." S.D. v. Manville Bd. of Educ., 989 F. Supp. 649, 656 (D.N.J. 1998); Bilazzo v. Portfolio Recovery Assocs., LLC, 876 F. Supp. 2d 452, 458 (D.N.J. 2012) ("In order to meet this burden, the party seeking fees is initially required to submit evidence supporting the hours worked and the rates claimed.")

As stated above, applying the lodestar formula requires a two-step analysis. "The first step in applying the lodestar formula is to determine the appropriate hourly rate." In re Schering-Plough/Merck Merger Litig., 2010 WL 1257722 at *17 (D.N.J. Mar. 26, 2010).  To make this determination, "the court should assess the experience and skill of the prevailing party's attorneys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." DirecTV, Inc. v. Clark, 2007 WL 2212608, at *3 (D.N.J. July 27, 2007) (quoting Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir.1990)). Affidavits from the attorney, other attorneys in the community, as well as other evidence are often submitted to meet this standard. See Chaaban v. Criscito, 2013 WL 1737689, at *10 (D.N.J. Apr. 3, 2013), report and recommendation adopted, 2013

WL 1730733 (D.N.J. Apr. 22, 2013) ("In satisfying a prima facie case of reasonable fees, attorneys may not rest on their own affidavits.")  Should the court determine "that the prevailing party has failed to sustain its burden with respect to a reasonable market rate, it must use its discretion to determine the market rate."  L.J. ex rel. V.J. v. Audubon Bd. of Educ., 373 F. App'x 294, 297 (3d Cir. 2010).

In the instant matter, the Certification indicates that Ms. Cooper charged both Gary and Michael Lax an hourly rate of $500. (See ECF 129 at 22-31).  As Mr. Monahan notes in his submission, (ECF 130 at 3), Ms. Cooper provides no information on why a $500 per hour rate is appropriate.  The Court has no information on whether this is her usual rate, her years of experience, her education, area of expertise, or how her rate compares to the market rate in the community.  Therefore, it falls to the Court to determine what is a reasonable market rate.  See L.J. ex rel. V.J., 373 F. App'x at 297.

Because this case is docketed in the Camden vicinage and Ms. Cooper's letterhead indicates that her office is in Sewell, New Jersey, (ECF 129 at 1), the relevant market on which to base the rate is southern New Jersey.  Connor v. Sedgwick Claims Mgmt. Servs., Inc., 2012 WL 6595072, at *1 (D.N.J. Dec. 18, 2012) (determining the appropriate hourly rate based on "prevailing rates in the southern New Jersey region"); L.J. ex

rel. V.J., 373 F. App'x at 298 (considering the reasonable hourly rate for an attorney in the southern New Jersey market). In Connor, the Court found the "prevailing hourly attorney billing rate in the southern New Jersey market [to be] $250." Connor v. Sedgwick Claims Mgmt. Servs., Inc., 2012 WL 608483, at *5 (D.N.J. Feb. 23, 2012). While Connor provides a helpful guidepost, it is almost ten years-old and this Court will not finish its analysis there. While not accepted as dispositive by New Jersey courts, courts in this district have relied on Clio's annual Legal Trends Report[3] and the fee schedules set forth by Community Legal Services of Philadelphia ("CLS"). See Bilazzo, 876 F. Supp. 2d at 470 (holding that the CLS was a helpful metric in setting fee rates under the Fair Debt Collection Practices Act); Warner v. Twp. of S. Harrison, 2013 WL 3283945, at *10 (D.N.J. June 27, 2013) (applying CLS' fee structures in a case alleging misappropriation of personal information); Stadler, 2018 WL 3617967 at *9 (considering CLS' fee structures in a civil rights case); Kaisha v. Lotte Int'l Am. Corp., 2019 WL 5079571, at *3 (D.N.J. Oct. 10, 2019) (declining to apply CLS's rates to a set of facts but finding "The Clio Report provides a data point for the Court's consideration"). In the

---

[3] Clio is a cloud-based legal technology company that issues annual reports on trends in the legal industry. (See 2017 Legal Trends Report, https://www.clio.com/resources/legal-trends/2017-report/).

absence of more on point information on appropriate hourly rates for Ms. Connor, this Court considers the Clio report and the CLS fee structure.

Because the reasonableness of attorneys fees must be analyzed based on the time the petition for attorneys fees was filed, which in this case was 2017, the Court considers the data closest in time to 2017. LeJeune v. Khepera Charter Sch., 420 F. Supp. 3d 331, 340 (E.D. Pa. 2019)(holding that the relevant rate is the "rate *at the time of the fee petition*") (emphasis in original); see also (ECF 129 (showing that the certification was filed in February 2017). The Clio 2017 Legal Trends Report states that the average rate for New Jersey attorneys was around $300 per hour. (2017 Legal Trends Report, https://files.clio.com/marketo/ebooks/2017-Legal-Trends-Report.pdf, at 43)). CLS' fee structure as of 2018 provides hourly rates based on an attorney's years of experience. (Attorney Fees, https://clsphila.org/about-community-legal-services/attorney-fees/). There is nothing in the record stating the number of years of experience that Ms. Cooper has as of 2017. However, the certification indicates that Ms. Cooper began representing Gary and Michael Lax in 2015. (See ECF 129 at 9, 13). Therefore, at the time of the fee application, Ms. Cooper must have had at least around 2 years of experience. Under the CLS framework, that would put her at a billing rate

11

between $230 and $275 per hour. (Attorney Fees, https://clsphila.org/about-community-legal-services/attorney-fees/). Given that the complaint alleged counts ranging from breach of contract to piercing the corporate veil, the Court finds that setting an hourly rate toward the upper end of the figures provided by Clio and CLS is appropriate. Therefore, this Court finds that the reasonable hourly rate for Ms. Cooper's work is $290 per hour.

The next component in analyzing fees under the lodestar method is determining whether the amount of hours billed for the work completed was appropriate. In re Schering-Plough/Merck Merger Litig., 2010 WL 1257722 at *17 ("In calculating the second part of the lodestar formula, the time reasonably expended, the district court should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary. Time expended is considered reasonable if the work performed was useful and of a type ordinarily necessary to secure the final result obtained from the litigation.") (internal quotation marks omitted). The Court has a duty to review the fee request carefully to determine if billing was reasonable. DirecTV, Inc., 2007 WL 2212608 at *4 ("The district court must go line, by line through the billing records supporting the fee request[.]")

12

(internal quotation marks omitted); Kaisha, 2019 WL 5079571, at *2 ("The Court must review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are excessive, redundant, or otherwise unnecessary.") (internal quotation marks omitted).  In reviewing billing statements, the Court must keep in mind the kinds of activities that are compensable such as "the preparation of filing the lawsuit, background research, productive attorney discussions and strategy sessions, negotiations, routine activities such as making telephone calls and reading mail related to the case, monitoring and enforcing a favorable judgment, and travel among other things."  Warner, 2013 WL 3283945 at *11.

The Court has reviewed the bill attached as Exhibit 3 to the Certification and finds that the entries are well documented and fall into the range of tasks described above.  Further, to the extent that Ms. Cooper billed for administrative tasks, her time entries for such tasks were generally short. Montone v. City of Jersey City, 2020 WL 7041570, at *11 (D.N.J. Dec. 1, 2020), appeal dismissed, 2021 WL 3626461 (3d Cir. Mar. 2, 2021 (finding reasonable an attorney's bill for completing administrative tasks where the attorney completed them fairly quickly).  Because Plaintiffs have not objected to Ms. Cooper's time entries and the Court does not find issue with any of them,

13

the Court will not reduce the time spent on preparing the Rule 11 Sanctions Motions for purposes of awarding attorneys fees.

Finally, this Court will make an adjustment to the amount of fees to be awarded to Ms. Cooper for her time associated with travel. See Warner, 2013 WL 3283945 at *13 ("This district has previously held the prevailing rate for travel time in New Jersey is fifty percent of the attorney's reasonable rate.") (internal quotation marks omitted). The Certification reveals that Ms. Cooper charged 9 hours for travel time in connection with the Rule 11 Sanctions Motion. (ECF 129 at 22-31). The Court will award fees for half that time: 4.5 hours. In sum, the Court believes that Plaintiffs are entitled to attorneys fees and costs totaling $44,420.22. The Court notes, though, that Ms. Cooper was previously sanctioned in a separate matter under Rule 11 on April 4, 2019 for an amount totaling $89,234.74 and that that amount has not been paid. (See Dkt. No. 1:14-cv-03292-NLH-AMD, ECF 240). The Court is not aware of any reason why it should not order the parties to show cause why the amount of attorneys fees that it intends to award today should not be used to offset the amount of attorneys fees owed in the other matter and will therefore issue an Order to Show Cause in conjunction with the issuance of this Opinion.

The Court will also award out-of-pocket expenses for Plaintiffs to the extent that they have been adequately

14

documented. See In re Schering-Plough/Merck Merger Litig., 2010 WL 1257722 at *19 (awarding expenses that had been entitled to "adequately documented and reasonably and appropriately incurred in the prosecution of the case"). The only expenses that were adequately documented by either Michael or Gary Lax were the expenses Gary Lax incurred at the hotel at which Ms. Cooper and Michael Lax stayed for the deposition. (See ECF 129 at 18-19). Therefore, the Court will award Gary Lax costs totaling $636.53.

## CONCLUSION

For the reasons expressed above, Plaintiffs shall be ordered to show cause as to why the award of attorneys fees in the amount of $44,420.22 should not be applied to offset outstanding fees owed in a separate matter. The Court shall also order that Gary Lax shall be awarded $636.53.

An appropriate Order will be entered.


Date: January 10, 2022                /s Noel L. HIllman
At Camden, New Jersey                 NOEL L. HILLMAN, U.S.D.J.